# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3156

_____

| | | |
|---|---|---|
| Gamal Abdi Moussa, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of |
| v. | * | an Order of the Immigration |
| | * | and Naturalization Service. |
| Immigration and Naturalization | * | |
| Service, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: June 14, 2002

Filed: September 10, 2002

_____

Before HANSEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

After an immigration judge (IJ) ruled in Gamal Abdi Moussa's favor on his nationality claim, the Board of Immigration Appeals (BIA) concluded Moussa was an alien subject to removal and vacated the IJ's order. We now grant Moussa's petition for review, vacate the BIA's order of removal, and decide Moussa's nationality claim in his favor.

Moussa was born in Addis Ababa, Ethiopia, on March 19, 1977. His father entered the United States as a refugee four years later, while Moussa and his mother

remained in Ethiopia. His parents divorced when Moussa was five. When Moussa was twelve, he came to the United States and began living with his father.

Moussa's father became a United States citizen on August 7, 1992, while Moussa was in his legal custody. At that time, the Immigration and Nationality Act (INA) provided that a child born outside the United States acquired citizenship upon "the naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . if [s]uch naturalization takes place while such child is under the age of eighteen years." 8 U.S.C. § 1432(a)(3) & (4) (repealed effective February 27, 2001).

In January 1999, the government commenced removal proceedings against Moussa based on several criminal convictions he obtained between 1996 and 1998. In the removal proceedings, Moussa claimed he was not subject to removal because he became a citizen, pursuant to § 1432, at the time of his father's naturalization.

Moussa's nationality claim turns on whether there was a "legal separation" of his parents at the time of his father's naturalization. As one might expect, the term "legal separation" in § 1432(a)(3) includes a divorce. Wedderburn v. INS, 215 F.3d 795, 799 (7th Cir. 2000) (citing Matter of H, 3 I.&N. Dec. 742 (1949)). Although Moussa's parents were divorced in 1982, they remarried in December, 1989, before Moussa's father was naturalized. The remarriage occurred via a proxy ceremony, however, while Moussa's mother was still in Ethiopia and his father remained in the United States. Moussa's mother did not come to the United States until several years later, and thus it is undisputed that Moussa's parents never consummated their remarriage before Moussa's father acquired his citizenship.

The government contends Moussa's parents resumed their marital relationship in December, 1989, and therefore were not legally separated when Moussa's father was naturalized. Moussa's derivative citizenship would then depend on *both* his

parents being naturalized while he was a minor. See 8 U.S.C. § 1432(a)(1). Moussa, on the other hand, believes the IJ correctly determined his parents were legally separated when his father became a citizen. He contends the proxy marriage is not recognized as a valid marriage under well-established immigration law, relying primarily upon the INA's definitions of "spouse," "wife," and "husband" which do not include persons who participate in "any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated." Id. § 1101(a)(35). As a result, he argues the BIA erred when it ordered his removal from the United States and vacated the IJ's order.

We first address our jurisdiction to review the BIA's order of removal. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." Id. § 1252(d)(1). The government claims Moussa failed to exhaust his administrative remedies because he did not articulate before the BIA the precise argument he now advances on appeal, that is, his reliance on the INA's definition of "spouse" as the grounds for contending his parents were still legally separated in 1992. The government further contends § 1252(d)(1)'s exhaustion provisions are jurisdictional in nature. See Nehme v. INS, 252 F.3d 415, 420 (5th Cir. 2001); cf. Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000) (noting a statutory exhaustion provision is jurisdictional if it contains "sweeping and direct" language indicating a lack of jurisdiction prior to exhaustion, rather than language merely codifying a general exhaustion requirement).

Even assuming § 1252(d)(1) is jurisdictional in nature, we reject for two reasons the government's contention that we lack jurisdiction. First, we necessarily have jurisdiction to determine our jurisdiction, Kansas City So. Ry. Co. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 (8th Cir. 1980), and the exhaustion provisions of § 1252(d)(1) do not apply to "any person" challenging a final order of removal, only to an "alien" — precisely what Moussa claims not to be. Thus, we

must determine whether Moussa is an alien in order to decide whether § 1252(d)(1) applies to him. See Hughes v. Ashcroft, 255 F.3d 752, 755 (9th Cir. 2001) ("Nevertheless, we do have jurisdiction to review Petitioner's claim that he is a United States national or citizen and thus is not 'an alien' subject to removal.").

Second, we disagree with the government's claim that Moussa failed to exhaust his administrative remedies. We find it somewhat incongruous for the government to rely upon an exhaustion-of-remedies defense when Moussa obtained in the administrative process the very remedy he sought, only to have it taken away by an appellate tribunal. The undisputed facts regarding the 1989 remarriage were before both the IJ and the BIA, and both tribunals considered the effect of the remarriage on Moussa's nationality claim, and therefore the issue was exhausted in the administrative process. The government contends Moussa failed to exhaust the issue only because he did not precisely articulate his reliance upon the INA's definition of "spouse" when the issue was before the BIA. We disagree. Having prevailed on his nationality claim before the IJ, Moussa could not be expected to prognosticate and rebut in advance the precise grounds upon which the BIA might reject the IJ's order. Often a party cannot point out a tribunal's alleged legal error until after the alleged error is made. We believe that is essentially what occurred here, and are loathe to apply the exhaustion doctrine under these circumstances.

We turn now to the merits. Moussa claims he acquired citizenship upon his father's naturalization in 1992 because his parents were still legally separated at the time. He contends the BIA erred when it concluded his parents resumed their marital relationship via the proxy marriage in 1989. We agree. Immigration law does not recognize the validity of a proxy marriage which has never been consummated, even where the parties lived together as husband and wife and consummated their relationship prior to the proxy marriage. See In the Matter of B, 5 I.&N. Dec. 698, 699 (1954). The undisputed facts considered by both the IJ and the BIA showed Moussa's parents never consummated the proxy marriage prior to the father's

-4-

naturalization. Thus, the BIA erred by failing to address that fact before deciding when Moussa's parents resumed their marital relationship.

In the Matter of B involved an application for a preference visa for the spouse of a lawful resident alien. The case turned on the INA's definition of "spouse" which, as stated above, excludes any person married in a "ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated." 8 U.S.C. § 1101(a)(35). The government attempts to distinguish In the Matter of B on the grounds it involved a statute that used the term "spouse" (what is now 8 U.S.C. § 1153(a)(2)), whereas § 1432 does not include the terms "spouse," "wife," or "husband." We are not persuaded by that argument.

Although § 1432 does not specifically use the terms "spouse," "wife," or "husband," we must determine whether Moussa's parents became a "husband" and "wife" via the proxy marriage to decide whether they were still legally separated when Moussa's father was naturalized. If they did not become "husband" and "wife" via the proxy marriage, their divorced status remained when Moussa's father became a citizen. In asking us to recognize a marital relationship between Moussa's parents via the proxy marriage, the government would have us divorce the terms "spouse," "wife," and "husband" from the concept of marriage. This we are unwilling to do. If a man and woman are not "husband," "wife" or "spouses" for immigration purposes, then neither are they married for immigration purposes. Conversely, a couple can not be in a marital relationship without being "husband" and "wife." Thus, it would be inconsistent to recognize a marital relationship between Moussa's parents under § 1432 when the INA does not otherwise recognize them as "husband" and "wife."

The government also relies upon a Department of Justice interpretation letter which states that a child's derivative citizenship does not vest under § 1432 when his

parents' "marital relationship is resumed before the naturalization of the one parent." INS Interp. 320.1(a)(6) n.28a. Reliance upon this interpretation merely begs the question, however, of when Moussa's parents resumed their marital relationship — at the time of the proxy marriage, or when the proxy marriage was consummated. Consistent with the INA's definition of the terms "spouse," "wife," and "husband," we conclude a marital relationship is not resumed via a proxy marriage until the marriage is actually consummated. Therefore, Moussa's parents had not resumed their marital relationship before Moussa's father was naturalized.

Finally, we reject the government's request to remand this issue back to the BIA rather than decide it ourselves. There are no disputed facts in this case, and Moussa's claim of nationality turns on a purely legal issue. Under these circumstances, the INA commands us to decide the issue ourselves. See 8 U.S.C. § 1252(b)(5)(A) ("If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court *shall* decide the nationality claim.") (emphasis added).

For the reasons stated above, we grant Moussa's petition for review, vacate the BIA's order of removal, and decide Moussa's nationality claim in his favor.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-