Manuel REYES–ALCARAZ, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–71719.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2004.

Filed April 8, 2004.

Maria Janossy, Glendale, CA, for the
petitioner.

Ernesto H. Molina, Trial Attorney, Of-
fice of Immigration Litigation, U.S. De-
partment of Justice, Washington, DC, for
the respondent.

Before HALL and GRABER, Circuit
Judges, and WEINER,* Senior District
Judge.

* The Honorable Charles R. Weiner, Senior
United States District Judge for the Eastern
District of Pennsylvania, sitting by designa-
tion.

938

GRABER, Circuit Judge:

Petitioner Manuel Reyes–Alcaraz, who is a native and citizen of Mexico, petitions for review of a final order of removal. The immigration judge ("IJ") held that Petitioner is an alien, not a national of the United States, and that he is removable for having committed an aggravated felony. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision in a one-judge order.

We hold that service in the armed forces of the United States, along with the taking of the standard military oath, does not alter an alien's status to that of a "national" within the meaning of the Immigration and Nationality Act ("INA") and, therefore, does not distinguish Petitioner's situation from the one we addressed in *Perdomo–Padilla v. Ashcroft*, 333 F.3d 964 (9th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1041, 157 L.Ed.2d 887 (2004). We also hold that exhibiting a deadly weapon with the intent to resist arrest, in violation of California Penal Code § 417.8, is a "crime of violence," 18 U.S.C. § 16, which therefore qualifies as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). Finally, as we held in *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 850 (9th Cir.2003), the BIA did not violate Petitioner's due process rights by issuing a one-judge order. Because Petitioner is an alien who is removable by reason of having committed an aggravated felony, and because Petitioner has demonstrated no due process violation, we lack jurisdiction to consider the merits of his petition. 8 U.S.C. § 1252(a)(2)(c).

BACKGROUND

Petitioner entered the United States as a lawful permanent resident in 1963. In 1968, he submitted an application for a Declaration of Intention to become a United States citizen.[1] The district court issued the requested declaration, but Petitioner failed to complete the naturalization process, either then or later.

From 1972 to 1974, Petitioner served in the United States Army. Upon joining, he filled out an enlistment form, as part of which he signed the following written oath:

> I, ———, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

After completing active duty, Petitioner served four years in the Army Reserves. He was honorably discharged in 1978.

In 1995, Petitioner was convicted of felony driving under the influence, in violation of California Vehicle Code § 23152(a). In 1996, Petitioner pleaded guilty to the felony offense of exhibiting a deadly weapon to a police officer, with the intent to resist arrest, in violation of California Penal Code § 417.8, which provides:

> Every person who draws or exhibits any firearm, whether loaded or unloaded, or other deadly weapon, with the intent to resist or prevent the arrest or detention of himself or another by a

---

1. Between 1795 and 1952, when the current INA was enacted, a Declaration of Intention was a procedural prerequisite to applying for naturalization. INS Interp. 334.2(a). Since 1952, aliens are still permitted to apply for and receive Declarations of Intention, but the declarations are no longer a prerequisite to naturalization and they confer no citizenship or nationality rights. Act of June 27, 1952, ch. 477, tit. III, ch. 2, § 334, 66 Stat. 254 (codified, as later amended, at 18 U.S.C. § 1445(f)).

peace officer shall be imprisoned in the state prison for two, three, or four years.

Petitioner received a sentence of two years' imprisonment.

In 2001, the Immigration and Naturalization Service ("INS")[2] commenced removal proceedings against Petitioner. The IJ held that Petitioner is an alien, that a violation of California Penal Code § 417:8 is an aggravated felony, and that Petitioner is removable and is not eligible for relief from removal or for cancellation of removal. The BIA affirmed that decision without opinion, in a one-judge order. Petitioner timely seeks review in this court.

## STANDARD OF REVIEW

 We review de novo the underlying jurisdictional questions presented: issues of law arising from a claim of nationality, *Perdomo–Padilla*, 333 F.3d at 966; and issues involving whether a particular offense constitutes an aggravated felony, *Rosales–Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir.2003).

## DISCUSSION

A. *Petitioner is not a "national of the United States."*

 The INA defines "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Petitioner argues that he satisfies the second prong of the definition and that, therefore, he is not removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an "alien" convicted of an aggravated felony, even if his 1996 conviction otherwise qualifies as an aggravated felony.

Petitioner is not the first to make this argument. In fact, not long after his final brief was filed, we decided *Perdomo–Padilla*, which appears to foreclose Petitioner's argument. We held in *Perdomo–Padilla* that merely applying for naturalization—and thereby affirming that one is *willing* to take an oath of permanent allegiance to the United States—does not make one a "national of the United States" within the meaning of the applicable statute. 333 F.3d at 966. We said that "a person can become a 'national of the United States' under the INA only through birth or naturalization." *Id.* at 972. Petitioner gives three reasons why the outcome of his case should be different, but we find none persuasive.

### 1. *Perdomo–Padilla*

First, Petitioner argues that *Perdomo–Padilla* was wrongly decided. Specifically, he asserts that we overlooked certain contextual clues in the statutory scheme. As a three-judge panel, however, we are not at liberty to overrule *Perdomo–Padilla*. *Santamaria v. Horsley*, 110 F.3d 1352, 1355 (9th Cir.1997).

### 2. *Military Oath*

Second, Petitioner argues that his case is distinguishable, factually, because by serving in the armed forces and taking the requisite military oath he demonstrated permanent allegiance to the United States. Although the cases are, indeed, distinguishable factually, the legal analysis in *Perdomo–Padilla* necessarily rejected the similar claim here.

We held that, historically, the term "national" referred only to those born in outlying territories of the United States. *Perdomo–Padilla*, 333 F.3d at 967–68.

**2.** The INS is now called the Bureau of Citizenship and Immigration Services. For the sake of consistency, we will refer to it as the INS throughout this opinion.

We then considered the statutory and regulatory context of § 1101(a)(22) and concluded that birth and full naturalization are the *only* two ways to attain the status of a "national" under the INA. *Id.* at 966, 969–71. Finally, we disagreed with the reasoning of the few cases from other courts that have held that evidence of "permanent allegiance," without more, can make one a "national of the United States." *Id.* at 971–72.

By rejecting the statutory argument that one can become a "national" under the INA by demonstrating "permanent allegiance" through some act other than full naturalization, *Perdomo–Padilla* precludes Petitioner's argument that signing the military oath and serving in the Army—or any other demonstration of "permanent allegiance" short of full naturalization—are sufficient to make him a United States national.

Even were we free to decide that Petitioner could achieve national status by some act other than full naturalization, we would conclude that the military oath does not demonstrate that the signer "owes *permanent* allegiance to the United States." 8 U.S.C. § 1101(a)(22) (emphasis added). The military oath, fairly read, promises allegiance (as well as obedience to the orders of superior officers and the Commander in Chief) for the duration of military service, rather than permanently. Furthermore, the military oath lacks a critical feature of the naturalization oath— the renunciation of foreign allegiances. *See* 8 U.S.C. § 1448(a) (stating that applicants for citizenship must take an oath to, among other things, "renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the applicant was before a subject or citizen").

### 3. *Military Personnel under the INA*

Third, Petitioner argues that the INA itself demonstrates that those who serve in the military should be deemed "nationals of the United States." We disagree.

In 8 U.S.C. §§ 1439 and 1440, Congress relaxed the naturalization requirements for those who have served in the military. For example, § 1439 dispenses with the duration-of-residency requirement for certain aliens who served honorably in the military and permits naturalization of current military personnel despite the pendency of removal proceedings. Section 1440(a) dispenses, in some cases, with the prerequisite of admission for permanent residency. However, these sections state only that a person who meets the requirements "may be naturalized." *Id.* §§ 1439(a) and 1440(a). Neither section provides for automatic conferral of citizenship, and neither provides that a person achieves the status of a "national" by serving in the military.

Indeed, the statutes suggest that the persons to whom they apply are *not* citizens and are *not* nationals. If current military personnel already were nondeportable nationals—by virtue of their military service or their taking of the standard military oath—then § 1439(b)(2) would not need to exempt them from § 1429, a provision that normally prevents naturalization while removal proceedings are pending.[3]

---

3. Section 1429 provides:
 [E]xcept as provided in sections 1439 and 1440 of this title no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and

 no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act[.]

Neither does 8 U.S.C. § 1440–1 avail Petitioner. That section sets forth a procedure for granting posthumous citizenship to those who have died as a result of active-duty service during a time of conflict. Of course, a person who is deceased cannot be deported. The operation of this section simply does not bear on the question of deportability.

### 4. *Conclusion*

Petitioner is not a "national of the United States" for purposes of the INA. He is, therefore, subject to removal. We turn next to the question whether he was convicted of an aggravated felony.

### B. *Exhibiting a deadly weapon with intent to evade arrest is an aggravated felony.*

█ Petitioner also argues that the statute of conviction on which the BIA relied does not constitute an "aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii). The BIA held that Petitioner is subject to removal based on his 1996 conviction under California Penal Code § 417.8. An "aggravated felony" includes a "crime of violence" as defined in 18 U.S.C. § 16. In turn, a "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).

Section 417.8 requires, as an element, that the defendant have drawn or exhibited a firearm or other deadly weapon and that the defendant have done so with an intent to resist, or prevent a peace officer from effecting, an arrest (either the defendant's or someone else's). This is not, as Petitioner argues, analogous to mere possession of a deadly weapon. By drawing or exhibiting a deadly weapon in order to resist or prevent an arrest, a person is threatening to use the weapon if the officer continues with the arrest. Conviction under section 417.8 necessarily involves a threatened use of physical force. *Cf. United States v. David H.*, 29 F.3d 489, 494 (9th Cir.1994) (per curiam) (holding that robbery perpetrated by creating a fear of immediate and unlawful injury is a threatened use of physical force). Therefore, Petitioner is removable by reason of his 1996 conviction.

### C. *Petitioner's due process argument is foreclosed by our precedent.*

Next, Petitioner argues that the "streamlining" procedure violated his right to due process. Pursuant to 8 C.F.R. § 1003.1(a)(7), a single member of the BIA decided Petitioner's appeal from the IJ's decision, a process commonly referred to as "streamlining." In *Falcon Carriche*, however, we held that "streamlining does not violate an alien's due process rights." 350 F.3d at 850.

### D. *We lack jurisdiction over Petitioner's argument on the merits.*

Finally, Petitioner contends that the BIA erred in holding that he is not eligible for relief from removal. Our holdings that (1) Petitioner is an alien (2) who committed an aggravated felony and (3) who received due process prevent us from reviewing further the order of removal. *See* 8 U.S.C. § 1252(a)(2)(c) (providing that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]").

PETITION DISMISSED.