# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELYSEE THEAGENE,

　　　　　　　　　　　*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,

　　　　　　　　　　　*Respondent.*

No. 02-71224

Agency No.
A31-121-648

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 17, 2003—Pasadena, California

Filed June 15, 2005

Before: Andrew J. Kleinfeld and Kim McLane Wardlaw,
Circuit Judges, and Donald C. Pogue,** International Trade
Judge.

Opinion by Judge Pogue;
Partial Concurrence and Partial Dissent by Judge Kleinfeld

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Donald C. Pogue, Judge for the United States Court of International Trade, sitting by designation.

**COUNSEL**

Jaime Jasso, Esq., California Alien Rights Project, for petitioner.

Robert D. McCallum, Jr., Assistant Attorney General, Richard M. Evans, Assistant Director, Michelle R. Slack, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, for respondent.

**OPINION**

POGUE, International Trade Judge:

Elysee Theagene petitions the court for review of the Board of Immigration Appeals' final order of removal, arguing that

(1) he is a citizen of the United States; (2) the BIA erred in granting a motion to reconsider its own decision that he was eligible for withholding of deportation; (3) the BIA erred in applying an intervening en banc decision to Petitioner's case on reconsideration; and (4) the BIA incorrectly applied the holding in that intervening decision to Petitioner's case. In a memorandum disposition filed August 27, 2003, we found that we lacked jurisdiction over the nationality claim because the claim had not been raised during the administrative proceedings. We also held that the remaining claims lacked merit. Theagene filed a petition for rehearing raising substantial questions regarding our jurisdiction to hear his nationality claim. We granted the petition, and, after briefing by both parties, we conclude that we have jurisdiction to review Theagene's nationality claim. However, because service in the armed forces is not itself sufficient to ground a claim for nationality, and because Theagene's other claims also lack merit, we deny the petition for review.

## I. Background

Theagene is a native of Haiti who was admitted to the United States in April 1974, when he was six years old, as a lawful permanent resident. He never applied for naturalization as a United States citizen, but served in the United States Navy between 1989 and 1993 and participated in combat operations during the first Gulf War. He was honorably discharged from the service. Theagene has not returned to Haiti since his arrival in the United States, does not speak French or Creole, and has no relatives in Haiti.

In November 1998, Theagene was convicted of first degree residential burglary in California, in violation of California Penal Code § 459(a), and sentenced to imprisonment for a term of four years. Two years later, the INS initiated proceedings to remove Theagene from the United States. The proceedings were initiated pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for the removal of "[a]ny alien who

is convicted of an aggravated felony at any time after admission" into the United States. On November 22, 2000, an Immigration Judge ("IJ") found Theagene removable under § 1227(a)(2)(A)(iii) as a result of his burglary conviction.[1] Theagene appealed the decision of the IJ to the Board of Immigration Appeals ("BIA" or "Board").[2] The Board affirmed the IJ's finding that Theagene is removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

Theagene argues that (1) he is a United States national and therefore not subject to removal; (2) the BIA erred by reversing its decision upon a motion to reconsider; (3) the BIA erred in granting the motion to reconsider because the motion was legally deficient; (4) the BIA erred by failing to offer Petitioner opportunity for rebuttal; (5) the BIA erred by failing to specifically notify Petitioner that it would apply an intervening change in applicable law to his case upon reconsideration; and (6) the decision of the BIA in *Matter of J-E-* did not com-

---

[1]Theagene subsequently requested asylum and withholding of removal and protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("Convention Against Torture"). In reconsidering his initial finding of removability, the IJ concluded that Theagene was not eligible for asylum, had not demonstrated that it is more likely than not that he would be tortured by the Haitian government or its agents, and was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) due to his burglary conviction.

[2]On October 30, 2001, the BIA decided that Theagene was eligible for withholding of removal and protection under the Convention Against Torture. On November 29, 2001, however, the INS filed a motion for en banc reconsideration, asserting that Theagene had not established that he would more likely than not be subjected to torture in Haiti, and that any harm that may befall him in Haiti would not constitute "torture" as defined by 8 C.F.R. § 208.18(a)(1). In reviewing the motion to reconsider, the BIA noted that there had been an intervening change in the law regarding the removal of alien felons to Haiti. In *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002), the BIA held that neither indefinite detention nor inhuman prison conditions in Haiti constitutes torture. Relying on *Matter of J-E-*, the BIA concluded that there was insufficient evidence to establish that Theagene would more likely than not be subjected to torture in Haiti.

pel reversal of the BIA's original decision in Petitioner's case. In a memorandum disposition filed August 27, 2003, we found that we lacked jurisdiction over the nationality claim because it had not been raised during the administrative proceedings. *Theagene v. Ashcroft*, Court No. 02-71224 at 2 (Aug. 27, 2003) (unpublished). We then found that the remaining claims lacked merit. *Id.* at 2-5.

## II.   *Theagene's Nationality Claim*

### A.

**[1]** In our prior memorandum disposition, we relied on 8 U.S.C. § 1252(d)(1) (2000)[3] to hold that Theagene's nationality claim failed because, while Theagene had appealed his order of removal to the Board, he had not raised his nationality claim before the Board. *Theagene v. Ashcroft*, Court No. 02-71224 at 2 n.1 (Aug. 27, 2003) (unpublished). On petition for rehearing, Theagene alerts us to the tension that exists between § 1252(d)(1) and a second provision specifically providing for judicial review of nationality claims. That second provision, 8 U.S.C. § 1252(b)(5), provides that where an order of removal is entered against a petitioner, and "[i]f the petitioner claims to be a national of the United States," the federal courts shall decide the claim. 8 U.S.C. § 1252(b)(5). Moreover, § 1252(b)(5) provides that "[t]he petitioner may have such nationality claim decided only as provided in this paragraph." *Id.* Because only an "alien" may be required to exhaust administrative remedies under § 1252(d)(1), the plain language of § 1252(b)(5) requires that upon a petition for review of the BIA's final order of removal, we must evaluate a petitioner's claim to United States nationality regardless of whether the claim was raised below.[4]

---

[3]Title 8 U.S.C. § 1252(d)(1) provides: "A court may review a final order of removal only if the alien has exhausted all administrative remedies . . . ."

[4]We do not mean to imply that the question of nationality may not be addressed at the administrative level. Inasmuch as the immigration judge

**[2]** Theagene here makes a claim of United States nationality. If Theagene is, as he claims, actually a United States citizen, the immigration laws, including their requirement of administrative exhaustion, do not apply to him. The wording of the two statutes reflects this understanding; whereas 8 U.S.C. § 1252(a)(5) uses the neutral term "petitioner," the terms of 8 U.S.C. § 1252(d)(1) apply only to an "alien." This reading has been explicitly adopted by at least one other circuit. In *Moussa v. INS*, 302 F.3d 823 (8th Cir. 2002), the Eighth Circuit rejected the government's argument that the jurisdictional nature of 8 U.S.C. § 1252(d)(1) precluded the court from considering petitioner's nationality claim. As the court held, "we necessarily have jurisdiction to determine our jurisdiction, and the exhaustion provisions of § 1252(d)(1) do not apply to 'any person' challenging a final order of removal, only to an 'alien,'—precisely what [petitioner] claims not to be." *Id.* at 825 (internal citation omitted).

**[3]** Moreover, *Moussa* relies on a decision of our Circuit. *See Moussa*, 302 F.3d at 825 (citing *Hughes v. Ashcroft*, 255

and the Board have no subject matter jurisdiction over United States nationals, those officials will have to investigate the issue if it is raised. It remains, however, that the plain language of the statute specifies that only an alien may be required to exhaust remedies. Moreover, a citizen cannot transform himself into an alien merely by failing to raise the question of his citizenship at the administrative level. *Cf.* 8 U.S.C. § 1481 (United States citizenship may be lost only by overt act, such as affirmative written renunciation or oath of allegiance to foreign power). Title 8 U.S.C. § 1252(b)(5) appears, by providing for de novo review of this issue, to provide a failsafe against inadvertent or uninformed execution of a final order of removal against a person with a claim to United States nationality. Finally, the legislative history does not indicate that § 1252(d)(1) was meant to curb the operation of § 1252(b)(5). Rather, de novo review is guaranteed to any petitioner raising a nationality claim. The requirement of exhaustion appears only to ensure that petitioners not bypass administrative procedures available as of right before proceeding with judicial review. *See* H.R. Rep. No. 1086 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2950, 2973.

F.3d 752 (9th Cir. 2001)). In *Hughes*, we held that despite the requirement of exhaustion, we retain "jurisdiction to review Petitioner's claim that he is a United States national or citizen and thus not 'an alien' subject to removal." *Hughes*, 255 F.3d at 755.[5] Therefore, we hold that we have jurisdiction to entertain Theagene's nationality claim, and must in fact entertain that claim before § 1252(d)(1) can be applied.

---

[5]The later case of *Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002), does not counsel differently. That case does not consider the effects of the terms "petitioner" and "alien" in § 1252(b)(5) and § 1252(d)(1) respectively because the petitioner in *Taniguchi* failed to appeal the order of removal that had been entered against her. *Taniguchi*, 303 F.3d at 955.

Citing *Rivera v. Ashcroft*, 394 F.3d 1129, 1138 (9th Cir. 2005), the dissent argues that *Taniguchi* stands for the proposition that failure to exhaust remedies at the administrative level will result in denial of a "frivolous" citizenship claim made under § 1252(b)(5). The petitioner in *Taniguchi* did not bring a claim under § 1252(b)(5). Rather, the petitioner sought habeas relief, which was denied because of her failure to exhaust remedies by not bringing her citizenship claim under § 1252(b)(5). *Taniguchi*, 303 F.3d at 956. In discussing the case, *Rivera* states that Taniguchi could properly have brought her "patently frivolous" claim to citizenship under § 1252(b)(5), and thus, could have preserved her habeas claim. *Rivera*, 394 F.3d at 1138. Although it was noted in *Rivera* that Taniguchi did not raise her citizenship claim before the IJ, the opinion is nonetheless clear that she could have, and should have, brought a claim under § 1252(b)(5). *Id.* Accordingly, regardless of how "frivolous" the dissent may believe petitioner's claim to be, *Rivera* holds that it could properly be raised under § 1252(b)(5) despite petitioner's failure to raise the claim at the administrative level.

*Minasyan v. Gonzales*, the second case cited by the dissent, relies on *Rivera* to hold that failure to raise a claim of citizenship will not defeat jurisdiction under § 1252(b)(5) even where the petitioner has actually been deported. *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005). The case briefly mentions *Taniguchi* in a footnote, stating that in *Taniguchi*, "we declined to consider a patently frivolous claim to citizenship." *Minasyan*, 401 F.3d at 1075 n.9. But as *Rivera* and *Taniguchi* make clear, Taniguchi's habeas claim failed not because of her failure to claim citizenship during administrative hearings, but due to her failure to ever bring a claim under § 1252(b)(5). Moreover, logically, we cannot determine whether a claim to citizenship is frivolous unless we have jurisdiction to hear it.

## B.

**[4]** Theagene claims United States nationality based on his service in the United States military during the first Gulf War. We have held that service in the armed forces is not itself sufficient to ground a claim for nationality. *See Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 938 (9th Cir. 2004) (holding that "service in the armed forces of the United States, along with the taking of the standard military oath, does not alter an alien's status to that of a 'national' within the meaning of the Immigration and Nationality Act"). Neither party claims that there are disputed issues of material fact with regard to Theagene's nationality claim, and we find none in the record. Accordingly, we consider only Theagene's legal argument. *See* 8 U.S.C. § 1252(b)(5)(A). Thus, it would appear that Theagene has no persuasive claim to United States nationality.

## III. *The BIA's grant of the motion to reconsider*

**[5]** Theagene argues that the Board erred in granting the government's motion to reconsider its ruling on Theagene's Convention Against Torture claim. The government's motion to reconsider properly stated a perceived error in law that the Board committed in reversing the immigration judge. As such, the Board acted within its discretion in granting the motion to reconsider. 8 C.F.R. § 1003.2(a), 1003.2(b)(1).

## IV. *Application of an intervening BIA decision to Petitioner's case*

**[6]** Citing our decision in *Gonzalez v. INS*, 82 F.3d 903 (9th Cir. 1996), Theagene argues that the Board violated his right to due process by applying an intervening en banc decision of the Board without providing him with notice and an opportunity to respond. We cannot agree. *Gonzalez* and *Castillo-Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992), upon which *Gonzalez* relied, involved the Board's decision to take administrative notice of facts that bore on whether an alien was

deportable. In *Gonzalez* and *Castillo-Villagra*, we concluded that the Board's decision to make legal judgments on the basis of facts of which the Board took administrative notice violated an alien's right to due process where the Board failed to give the alien an opportunity to respond. *Gonzalez*, 82 F.3d at 911-12; *Castillo-Villagra*, 972 F.2d at 1028-29. However, Theagene cites no authority for the proposition that an alien's right to due process is similarly violated when the Board applies controlling legal authority to a pending case without informing the alien or providing an opportunity to respond.

**[7]** The Board's decision to apply legal principles from intervening case law is of a different character than the Board's decision to draw legal conclusions from facts introduced through administrative notice. In the latter, the violation of due process stemmed from depriving the alien of notice and an opportunity to respond to the Board's legal conclusion through the introduction of other facts. *See Gonzalez*, 82 F.3d at 911-12. Yet, Theagene does not explain why the application of intervening law without notice offends due process, given that developing an additional factual record is unnecessary when applying a pure change in law. Though a tribunal often requests supplemental briefs in such cases, applying new law to a pending case without notice does not, under any authority cited to us, offend due process. Nor does Theagene explain why publication of controlling legal authority — published a month before the Board's decision to reconsider his case — does not provide sufficient notice and an opportunity to address the legal issues raised in that authority in a motion to reconsider or for leave to file a supplemental brief.

### V. *Application of Matter of J-E to Petitioner's case*

**[8]** Finally, Theagene argues that the Board's en banc decision in *Matter of J-E* did not require the Board to deny his petition on his Convention Against Torture claim. We review de novo the Board's determinations as to purely legal ques-

tions. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). The Board's initial October 30, 2001, decision, which granted Theagene asylum on the Convention Against Torture claim, rested on legal premises that the Board repudiated in *Matter of J-E. See Matter of J-E*, 23 I&N at 299-304. Theagene conceded in his administrative proceedings that he had no evidence that his family had ever been persecuted or that he had personally been a victim of persecution in Haiti. As his claim under the Convention Against Torture was based on reports of prison conditions and detention, just as in *Matter of J-E*, the Board's application of *Matter of J-E* was legally sound. Theagene fails to distinguish *Matter of J-E* on appeal.

Insofar as Theagene challenges the BIA's holding in *Matter of J-E*, we are required to defer to the Board's reasonable interpretation of immigration laws. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001). The Board's decision in *Matter of J-E* is not unreasonable, so we defer to the Board's interpretation.

## VI.   Conclusion

Pursuant to 8 U.S.C. § 1252(a)(5), we have jurisdiction to entertain Theagene's claim of United States nationality, despite the fact that the claim was not made before the Board of Immigration Appeals. Nevertheless, we find that Theagene's former service in the United States military is not itself sufficient to prove nationality. Theagene's other claims also lack merit. Accordingly, we deny the petition for review.[6]

**DENIED.**

---

[6]We note our discomfort with a rule of law that results in the deportation of an honorably discharged former member of the United States armed forces who has lived in the United States since he was a child. It is, however, the role of Congress, and not the Courts, to alter this rule.

KLEINFELD, Circuit Judge, concurring in part and dissenting in part:

I concur in the result. I agree with all but part II(A) of the opinion because I disagree with that important section on jurisdiction.

As in many asylum cases, the outcome here is a sad one. A man who served honorably in our armed forces during wartime, and whose only connection with Haiti is that he was born there, will be sent back, with no apparent way to earn a living and no ability even to speak the language. But as the majority concludes, there is nothing we can do about that.[1]

The majority's jurisdictional argument, however, is mistaken. Administrative proceedings like those in our immigration courts exist because the large volume of cases requires specialized courts that handle nothing else and can resolve the cases within a reasonable time. Theagene was haled into such a court because he was convicted of burglary in a dwelling[2] — conduct that gets aliens deported from our country.[3] The immigration court had jurisdiction, however, only if Theagene was an alien. He could have avoided the removal order, despite his aggravated felony, merely by establishing that he was not an alien.

We are now reviewing the BIA's decision, and the statute limits us to a review of the record and the decisions made on the points raised before the BIA. Title 8 U.S.C. § 1252(d)(1), a subsection of the judicial review statute, says that we may

---

[1]*See Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 938-40 (9th Cir. 2004); *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 966-72 (9th Cir. 2003).

[2]*See* Cal. Penal Code § 459(a).

[3]*See* 8 U.S.C. § 1252(a)(2)(C); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1045 (9th Cir. 2004) (noting that a burglary offense for which a term of at least one-year imprisonment was imposed is an "aggravated felony").

review a removal order only if "the alien has exhausted all administrative remedies available to the alien as of right."[4] Title 8 U.S.C. § 1252(b)(4)(A) says that we must "decide the petition only on the administrative record."[5] The record shows that not only did Theagene fail to argue in the administrative proceedings that he was not an alien, but he also testified expressly, under oath, that he was an alien. The Immigration Judge asked Theagene at the beginning of his hearing whether he was a citizen or national of the United States. Theagene replied, "No, sir." The IJ then asked him if he was a native and citizen of Haiti. Theagene replied, "Yes, sir." That should end this case. We have no occasion to decide whether a person who is not an alien can obtain de novo adjudication of his citizenship in this court, because Theagene is not such an individual — by his own judicial admission. Our court cannot properly adjudicate a claim to citizenship that a petitioner has affirmatively waived.[6] Perhaps some American nationals mistakenly waive their claim to citizenship before an IJ. But had Theagene done so here, the lawyer he obtained while his case was still before the IJ could have clarified the record and asserted Theagene's claim to citizenship. Such a clarification would have defeated the jurisdiction of the immigration court and prevented the removal order.

The majority opinion disregards this waiver, and the majority's decision to reach the waived claim conflicts with our decision in *Taniguchi v. Schultz*.[7] I concede that *Taniguchi* appears to be in tension with our decision in *Hughes v. Ashcroft*,[8] but that tension does not entitle a panel to disregard *Taniguchi*. We are bound by *Taniguchi*, under which a frivo-

---

[4]8 U.S.C. § 1252(d)(1); *see Barron v. Ashcroft*, 358 F.3d 674, 677-78 (9th Cir. 2004).

[5]8 U.S.C. § 1252(b)(4)(A).

[6]*See Barron*, 358 F.3d at 677-78; *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003).

[7]*Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002).

[8]*Hughes v. Ashcroft*, 255 F.3d 752 (9th Cir. 2001).

lous claim of citizenship fails where a petitioner does not exhaust his administrative remedies by raising the issue of citizenship before the IJ or the BIA.[9] It is clear that Theagene failed to raise his claim of citizenship before the IJ or the BIA, thereby failing to exhaust his claim. Since *Taniguchi* we have held that a petitioner need not exhaust a nonfrivolous claim of citizenship.[10] But at the time we heard Theagene's claim that he had become a national of the United States by taking the military oath, his claim had been rendered frivolous because we had already held that the only way someone can become a U.S. national is by birth or completion of the naturalization process.[11] We therefore have no jurisdiction to review Theagene's frivolous claim of citizenship that he raises before us for the first time.[12]

Only if Theagene had raised his claim to citizenship before the IJ and the BIA would 8 U.S.C. § 1252(b)(5), the statutory section upon which the majority relies, be material. That section is part of the "Judicial Review" statute that applies to petitions to the courts of appeals, and our review is limited to points raised and the record made below.[13] Had Theagene made his citizenship claim in his immigration court proceedings and lost, we would proceed according to the subsection of the judicial review statute relied upon by the majority. If the question were entirely legal, we would decide it, and if contested facts had to be determined, we would send it to the district court.[14] Either way, our decision would be de novo,

---

[9]*Taniguchi*, 303 F.3d at 955.

[10]*See Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005); *Rivera v. Ashcroft*, 394 F.3d 1129, 1138, 1140 (9th Cir. 2005).

[11]*See Perdomo-Padilla*, 333 F.3d at 972; *see also Reyes-Alcaraz*, 363 F.3d at 938-40.

[12]*See Minasyan*, 401 F.3d at 1075 & n.9 (noting that *Taniguchi* would bar jurisdiction over a frivolous claim of citizenship); *Rivera*, 394 F.3d at 1138 (same).

[13]8 U.S.C. § 1252(b)(4).

[14]8 U.S.C. §§ 1252(b)(5)(A)-(B).

without the usual deference to the agency, because the statute says that a nationality claim may be decided only as provided by § 1252(b)(5).[15]

But, as the majority concedes, our jurisdiction under § 1252(b)(5) cannot be exclusive. The IJ and the BIA must be capable of determining whether they have jurisdiction, which requires determining whether the person appearing before them actually is an alien. That is why the IJ asked Theagene what his nationality was, and whether he was a United States citizen. Subsection 1252(b)(5), which gives us jurisdiction to determine citizenship, is part of § 1252 which governs "Judicial Review," so § 1252(b)(5) is plainly part of the system for reviewing a decision that the BIA has already made, rather than a means of detouring around the BIA. When § 1252(b)(5) says that "[t]he petitioner may have such nationality claim decided only as provided in this paragraph," the word "only" cannot mean "the courts of appeals are the only place citizenship can be determined." Such an interpretation would make it impossible for the administrative agency to determine whether it had jurisdiction in contested cases. The word "only" must mean "this is the only way that the court of appeals can adjudicate alienage or citizenship if the point arises on review."

In *Moussa v. INS*,[16] the Eighth Circuit case on which the majority relies, the petitioner claimed all the way through his administrative proceedings that he was not subject to removal because he was a citizen.[17] *Moussa* upholds the correct proposition that where a person has claimed all along to be a citizen, and the BIA has decided that he is an alien, the court of

---

[15]8 U.S.C. § 1252(b)(5)(C).

[16]*Moussa v. INS*, 302 F.3d 823 (8th Cir. 2002).

[17]*See id.* at 824; *see also Minasyan*, 401 F.3d at 1074-75 (reviewing a non-frivolous claim of citizenship where the petitioner had argued that he was a citizen throughout his administrative proceedings); *Rivera*, 394 F.3d at 1136-39 (same).

appeals should decide, pursuant to § 1252(b)(5), whether he is actually an alien or a citizen. This is because if he were not an alien, the IJ and BIA would have lacked jurisdiction over his person, and their decisions would be a nullity.[18] *Moussa* does not stand for the proposition that one may litigate his case on the merits before the IJ and BIA, expressly conceding that he is an alien, but then relitigate his claims in the court of appeals on the contradictory basis that he is a citizen.

It makes no sense to establish an administrative process for handling the huge volume of immigration cases, but then, after a person has conceded that he is an alien and lost on the merits in the immigration court, permit him to start all over again by saying "I am not an alien, but a citizen," in the court of appeals. Allowing a person to try out an asylum claim by asserting that he is not a citizen, and then try to avoid an adverse asylum determination by asserting that he is a citizen, invites abuses that the overburdened system of adjudicating immigration cases cannot bear.

---

[18]*See Moussa*, 302 F.3d at 825.