**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUNNY CALAOGAN VILORIA, AKA Sonny Viloria Nabarette, AKA Sunny Nabarette, AKA Sunny V. Nabarette, AKA Sunny Vicoria Nabarrete, AKA Sunny Viloria Nabarrette, <br> *Petitioner*, <br><br> v. <br><br> LORETTA E. LYNCH, Attorney General, <br> *Respondent*. | No. 11-73725 <br><br> Agency No. A040-495-721 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 9, 2015—Honolulu, Hawaii

Filed December 21, 2015

Before: Kim McLane Wardlaw, Marsha S. Berzon,
and John B. Owens, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY<sup>*</sup>

### Immigration

The panel dismissed Sunny Calaogan Viloria's petition for review of the Board of Immigration Appeals' decision finding that he failed to establish derivative United States citizenship.

The panel held that this court lacks jurisdiction to resolve Viloria's citizenship claim on appeal of the BIA's decision vacating the Immigration Judge's order terminating removal proceedings and remanding, because there was no final order of removal. The panel held that the statutory provision for review of nationality claims, 8 U.S.C. § 1252(b)(5), did not create an exception to this court's limitation to review of final removal orders.

### COUNSEL

Manuel Q. Diones (argued), Law Offices of Manuel Q. Diones, LLLC, Honolulu, Hawaii, for Petitioner.

Yanal Harbi Yousef (argued); Stuart F. Delery, Acting Assistant Attorney General, Civil Division; Cindy S. Ferrier, Assistant Director; Timothy G. Hayes, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BERZON, Circuit Judge:

Petitioner Sunny Calaogan Viloria is the adopted son of a natural-born U.S. citizen father and a naturalized U.S. citizen mother. Born in the Phillippines in 1978, he entered the United States on an IR4 orphan visa at age seven. In June 2010, the government served him with a Notice to Appear charging him as removable based on his conviction for a third-degree drug offense seven years earlier. *See* 8 U.S.C. § 1227(a)(2)(B)(i).

Viloria argued before the Immigration Judge ("IJ") that he was not removable because he obtained automatic derivative citizenship from his parents upon his adoption. The IJ agreed and terminated removal proceedings. The government appealed the termination order to the Board of Immigration Appeals ("BIA"), which concluded that Viloria had not met his burden to establish citizenship, vacated the IJ's termination order, and remanded.

Viloria now petitions this court for review of his citizenship claim. As we explain below, because Viloria has not been ordered removed, we lack jurisdiction.

I.

Viloria was admitted to the United States in June 1986, in Honolulu, Hawaii, on an IR4 orphan visa. He immediately entered into the custody of his adoptive parents. The adoption became final in August 1987. Viloria has resided in the United States continuously since his adoption and has remained unmarried.

When he was twenty-four years old, Viloria pleaded no contest to promoting a dangerous drug in the third degree, Haw. Rev. Stat. § 712-1243, in connection with his possession of methamphetamine. The government later filed a Notice to Appear in the Honolulu Immigration Court, charging Viloria as removable under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of a controlled substance violation other than possession for personal use of less than thirty grams of marijuana.

At a hearing before the IJ, Viloria contested his removability on the ground that he obtained derivative citizenship through his adoptive parents. At the time of Viloria's adoption, the statutory provision for derivative citizenship provided that:

> (a) A child born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States, shall, if such alien parent is naturalized, become a citizen of the United States, when—
>
>> (1) such naturalization takes place while such child is unmarried and under the age of eighteen years; and
>>
>> (2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of eighteen years.

(b) Subsection (a)(1) of this section shall apply to an adopted child only if the child is residing in the United States at the time of naturalization of such adoptive parent, in the custody of his adoptive parents, pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1431 (1986).

Viloria admitted that he did not meet the criteria under section 1431(b) because his adoptive mother—like him, a Filipino citizen by birth—was naturalized in 1983, after Viloria's birth but before Viloria began residing in the United States in his adoptive parents' custody. He argued, however, that subsection (a) of section 1431, rather than subsection (b), applied to him, because he met the statutory definition of "child":

The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 1431 to 1434 of this title, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1) (1982).  Because he was an unmarried person under the age of twenty-one in the legal custody of his parents at the time of his adoption, he was a "child" under section 1101(c)(1); therefore, he contended, for purposes of obtaining citizenship he was subject to section 1431(a), not section 1431(b).

The IJ noted that the definition of "child" in section 1101(c)(1) applied "*except as otherwise provided*" by sections 1431 and 1434, and that the "except" clause could be read to preclude section 1101(c)(1) from applying when derivative citizenship is at stake.  But the IJ was persuaded by Viloria's argument that section 1431(b) supplemented, rather than replaced, the definition of "child" in section 1101(c)(1) as it applied to adopted children.  That is, the IJ held that former section 1431(a) was applicable *both* to an adopted child who met the criteria of section 1431(b) and to an adopted child who met the definition of "child" in section 1101(c)(1).

After the IJ terminated removal proceedings, the government appealed.  The BIA sustained the appeal, reasoning that under the plain language of former section 1431, adopted children were required to meet the criteria under subsection (b) to benefit from subsection (a).  It rejected Viloria's argument that he was a child under section 1101(c)(1), indicating that, under the plain language of that statute, section 1431 was an "except[ion]" to the definition of child, not a supplement.  Accordingly, the BIA vacated the IJ's order and remanded for further proceedings.

Viloria then petitioned this court for review.  The government filed a motion to dismiss for lack of a final order

of removal. We denied the motion without prejudice to renewal of the jurisdictional argument in the answering brief.

## II.

We dismiss the petition for lack of jurisdiction.

It is well established that this court's jurisdiction over removal proceedings is limited to review of final orders of removal. In relevant part, 8 U.S.C § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only in judicial review of a final order* under this section.

(Emphasis added).

That limitation applies even if it appears a removal order is likely forthcoming on remand. *Alcala v. Holder*, for example, held that this court lacked jurisdiction over the BIA's order affirming an IJ's grant of the government's motion to dismiss removal proceedings so that the government could reinstate a prior order of removal. 563 F.3d 1009, 1013 (9th Cir. 2009). Rejecting the petitioner's argument that the court had jurisdiction because the prior order of removal was likely to be reinstated, *Alcala* reaffirmed that "[t]he carefully crafted congressional scheme governing review of decisions of the BIA limits this court's jurisdiction to the review of final orders of removal," even if

the petitioner raises a constitutional claim or question of law. *Id.* at 1013, 1016. And *Abdisalan v. Holder*, a recent en banc decision of this court, confirmed that "[w]hen the BIA remands to the IJ for any reason, no final order of removal exists until all administrative proceedings have concluded." 774 F.3d 517, 526 (9th Cir. 2014), *as amended* (Jan. 6, 2015).

Against this backdrop, Viloria asserts that this court nonetheless has jurisdiction to resolve his citizenship claim on appeal of the BIA's order vacating the IJ's order terminating removal proceedings. Viloria concedes that no final order of removal has issued. He maintains, however, that the statutory provision for review of nationality claims, section 1252(b)(5), creates an exception to this court's limitation to review of final removal orders. We disagree.

First, the statute itself belies Viloria's argument. Section 1252 is headed "Judicial review of *orders of removal*." (Emphasis added). Section 1252(b) is entitled "Requirements for review of *orders of removal*" and further states that it applies "[w]ith respect to review of an *order of removal*." (Emphases added). Section 1252(b)(5)(A) states that "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim"; section 1252(b)(5)(B) instructs the court to transfer proceedings to the district court if "a genuine issue of material fact about the petitioner's nationality is presented"; and section 1252(b)(5)(C) limits consideration of a nationality claim to the manner provided in sections 1252(b)(5)(A) and (B). Finally, as noted above, section 1252(b)(9) states that "[j]udicial review of all questions of

law and fact . . . shall be available *only in judicial review of a final order* under this section."  (Emphasis added).

Section 1252(b)(5) does speak directly to nationality claims.  But nothing in it indicates that it creates an exception for nationality claims from section 1252(b)(9)'s emphatic jurisdictional restriction.   Nor does section 1252(b)(5) affirmatively grant broader jurisdiction than is otherwise provided by section 1252.  Instead, the provisions of section 1252(b)(5) govern a court proceeding in accordance with section 1252—that is, a proceeding initiated after entry of an order of removal.

Moreover, Congress contemplated the circumstances of individuals who wish to bring citizenship claims, yet provided that if a removal proceeding is pending or if the citizenship issue arose in such a proceeding, questions of citizenship should be resolved within that proceeding.  *See* 8 U.S.C. § 1503(a).  Section 1503 enables an individual to file a declaratory judgment action in federal district court seeking a declaration of citizenship.  *See id.*  But the statute also expressly states that "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceedings . . . , or (2) is in issue in any such removal proceeding."   This limitation on initiating the resolution of citizenship claims outside of removal proceedings, where those proceedings are in process, further evidences Congress's intent to restrict, as far as possible, review of citizenship claims arising in immigration cases in instances in which final orders of removal have not been entered.

Second, we have interpreted section 1252(b)(5) *not* to expand the limitation on jurisdiction generally established by section 1252. *Iasu v. Smith* declined to review a section 1252(b)(5) nationality claim brought in a habeas proceeding filed after the REAL ID Act eliminated habeas review of removal orders. 511 F.3d 881, 884, 889 (9th Cir. 2007). The petitioner suggested that because the REAL ID Act left section 1252(b)(5) intact, Congress had meant to confer special jurisdiction on the courts of appeals to review nationality claims. *Id.* at 889. *Iasu* disagreed, concluding that "[t]he plain language of § 1252(b)(5) requires that *upon a petition for review of the BIA's final order of removal*, we must evaluate a petitioner's claim to United States nationality." *Id.* (quoting *Theagene v. Gonzales*, 411 F.3d 1107, 1110 (9th Cir. 2005)). Because the petitioner "failed to file a petition for review challenging his final order of deportation," we lacked jurisdiction to review his claim. *Id.* at 890.

Third, although no case in this circuit has addressed the precise question presented here, several cases have confirmed the general rule that this court does not have jurisdiction to review a citizenship claim unless a final order of removal has been entered. *See Abdisalan*, 774 F.3d at 523, 526; *Anderson v. Holder*, 673 F.3d 1089, 1094–95 (9th Cir. 2012); *Alcala*, 563 F.3d at 1013.

We *have*, however, broadly interpreted the term "final order of removal" in section 1252 where the petitioner had no other forum for review of his citizenship claim. *See Anderson*, 673 F.3d 1089. *Anderson* addressed whether this court could review an *ultra vires* order of the BIA removing the petitioner after it reversed the IJ's order terminating removal proceedings. 673 F.3d at 1094–95. The BIA

disagreed with the IJ's conclusion that the petitioner had presented sufficient evidence of U.S. citizenship, but, rather than remanding to the IJ to determine the petitioner's removability, the BIA entered a removal order of its own. *Id.* at 1094. Recognizing that the BIA's order was "a legal nullity," *id.*, *Anderson* held that it was "nonetheless 'a final order of removal' for the purpose of conferring jurisdiction under 8 U.S.C. § 1252(a)." *Id. Anderson* recognized that any time a meritorious citizenship claim under section 1252(b)(5) is at issue, the underlying order of removal is technically a legal nullity, because "[a]n order of removal issued against a U.S. citizen is always *ultra vires* and void." *Id.* at 1096. But because the order's "practical and concrete effect [was] to deprive a United States citizen . . . of his right to reside in this country," and the order had "been *treated* as a final order of removal by the agency officials who executed it," it was "'a final order of removal' within the meaning of § 1252(a)." *Id.* at 1095–96. Thus, the court held that it had jurisdiction to review the "null" order. *Id.* at 1096.

This case is nothing like *Anderson*. First, *no* administrative order that purports to be a "final order of removal" has been issued, invalid or not. So no cognizable question of statutory interpretation arises as to the reach of the "final order of removal" concept in section 1252. Second, in treating an *ultra vires* order in *Anderson* as a valid final order of removal, the court was motivated by the concern that, if it did not address the claim before it, the petitioner would be deprived entirely of a judicial evaluation of his claim.[1]  *See id.* at 1095–96. Refusing to review the

---

[1] Courts resolving issues similar to those presented here have expressed concern that, in certain circumstances, no final order of removal will be entered, and so a petitioner with a non-frivolous claim to U.S. citizenship

petitioner's claim would have abrogated the court's role as "the final arbiter of constitutional matters," *Anderson* reasoned, and would violate the "[c]onstitution[al] mandate[] that any person with a non-frivolous claim to American citizenship receive a judicial evaluation of that claim." *Id.* at 1095 (quoting *Rivera v. Ashcroft*, 394 F.3d 1129, 1136 (9th Cir. 2005), *superseded by statute on other grounds*, REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(c) (2005)). Here, in contrast, Viloria will likely later have a judicial forum in which to attempt to prove his citizenship. He has already litigated his citizenship claim before the IJ and BIA. If and when the agency enters a final order of removal against him, he will have the opportunity to seek review of that order in this court, including the underlying adverse determination regarding his citizenship.[2]

Fourth, we acknowledge that requiring an individual with a non-frivolous claim to U.S. citizenship to undergo a prolonged administrative process before asserting that claim in an Article III court, may, if the claim proves valid, long delay the security afforded an individual by the recognition that he or she is a U.S. citizen. But strong policy

---

will have no forum in which to prove citizenship. *See* U.S. Const., art. I, § 9 cl. 2; *e.g.*, *Anderson*, 673 F.3d at 1095; *Iasu*, 511 F.3d at 887–88, 892–93.

[2] We note that Viloria could prevail before the BIA on a ground other than his citizenship and therefore not become subject to a final order of removal. Whether he could then bring some action to establish his citizenship—under section 1503(a) or via some other vehicle—is not a question before us. In such an instance, there might well be a constitutional imperative to provide a judicial forum for hearing the claim of citizenship. *See* n.1, *supra*. The statutory provisions would be interpreted with that concern in mind, as in *Anderson*.

considerations also weigh against the outcome Viloria seeks. For instance, in ruling that a partial remand order of the BIA was not reviewable, *Abdisalan* noted that "considerations of judicial efficiency . . . weigh in favor of reviewing a single final order of removal." 774 F.3d at 526. That rule "furthers the same policies as the finality rule embodied in 28 U.S.C. § 1291." *Id.* (quoting *Nat'l Steel & Shipbuilding Co. v. Dir., Office of Workers' Comp. Programs*, 626 F.2d 106, 107 (9th Cir. 1980)).

Similarly, *Theagene* held that a petitioner need not exhaust his citizenship claim in proceedings before the agency before a court of appeals addresses the claim on a petition for review. 411 F.3d at 1110. *Theagene* explained that, because section 1252(d)(1) states "only [that] an '*alien*' may be required to exhaust administrative remedies," the court had jurisdiction to determine whether the petitioner was in fact an alien subject to the exhaustion requirement. *Id.* (emphasis added); *accord Omolo v. Gonzales*, 452 F.3d 404, 407 (5th Cir. 2006); *Moussa v. INS*, 302 F.3d 823, 825 (8th Cir. 2002); *Bowrin v. INS*, 194 F.3d 483, 486 (4th Cir. 1999). While one could argue that *Theagene* supports the general proposition that section 1252(b)(5) permits exceptions to ordinary procedural requirements, the court emphasized that its decision did not diminish the importance of ensuring "that petitioners not bypass administrative procedures available as of right before proceeding with judicial review." 411 F.3d at 1110 n.4. It characterized section 1252(b)(5) as "a fail safe against inadvertent or uninformed execution of a final order of removal." *Id.* Policy concerns do not outweigh the wealth of authority requiring a final order of removal to confer jurisdiction on this court.

One final note: Viloria is not without recourse if, as he fears might happen, the Department of Homeland Security detains him during the pendency of removal proceedings. If those circumstances arise, he may file a habeas petition, which a federal district court will have jurisdiction to consider. *See Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008) (reversing a district court's dismissal, for lack of jurisdiction, of an immigration petitioner's habeas petition, where the detained petitioner claimed U.S. citizenship and was detained during the pendency of removal proceedings).[3]

III.

For the foregoing reasons, we conclude that we lack jurisdiction to consider Viloria's citizenship claim.

**DISMISSED for lack of jurisdiction.**

---

[3] In addition, procedural safeguards protect against unjustified prolonged detention. Specifically, Viloria would have the opportunity to contest any detention through statutorily authorized or judicially mandated bond hearings, in which the government would be required to show that he is a danger to himself or others or is a flight risk. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).