**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BENAD S. ABIODUN,

        Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General,

        Respondent.

Nos. 05-9585 and 05-9603

**PETITION FOR REVIEW OF AN ORDER OF**
**THE BOARD OF IMMIGRATION APPEALS**
**(B.I.A. NO. A73-764-249)**

Submitted on the briefs:[*]

Benad S. Abiodun, pro se.

Patricia M. Corrales-Talleda, Attorney, and Mark C. Walters, Assistant Director, Office of Immigration Litigation/Civil Division, United States Department of Justice, Los Angeles, California, for Respondent.

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**HARTZ**, Circuit Judge.

Benad Abiodun is a native and citizen of Nigeria who entered the United States lawfully in 1996. On May 4, 2005, an immigration judge (IJ) ordered him removed from this country as an aggravated felon because of his Colorado conviction in 2002 for distribution of a controlled substance. The Board of Immigration Appeals (BIA) affirmed, and Mr. Abiodun seeks review in this court. He contends that (1) he was nationalized when he signed an oath of allegiance as part of his naturalization application process; (2) his due-process and statutory rights were violated when his application for naturalization was denied; (3) the records of the Colorado conviction on which his removal was based were falsified, and the verdict was not supported by sufficient evidence; (4) his due-process rights were violated by the issuance of an immigration detainer shortly after his state conviction, and by his detention during the removal proceedings; and (5) he has not abandoned his application for asylum. We affirm, holding that signing an oath of allegiance during a naturalization examination is insufficient to confer citizenship; removal proceedings are not a proper forum to attack either the denial of an application for naturalization or a state-court conviction; there is no record support for a claim of falsification; we need not consider his challenge to the detainer or his detention during removal proceedings because he does not claim any resulting prejudice with respect to those proceedings; and we lack

jurisdiction to review his challenge to the determination that he abandoned his

asylum application.

## I.    BACKGROUND

On January 17, 2001, Mr. Abiodun filed an application for naturalization

with the Immigration and Naturalization Service (INS).[1]  On October 4, 2004, his

application for naturalization was denied by the Denver District Director of the

[1]On March 1, 2003, the INS ceased to exist, *see* Homeland Security Act of 2002 (HSA), Pub. L. No. 107-296, § 471; 116 Stat. 2135, 2205; 6 U.S.C. § 291. Three separate agencies within the Department of Homeland Security (DHS) have taken its place.  The Homeland Security Act (HSA) created the Bureau of Citizenship and Immigration Services, *see* HSA § 451; 116 Stat. 2135, 2195; 6 U.S.C. § 271, and made it responsible for adjudication of immigrant and visa petitions, naturalization petitions, and asylum and refugee applications, and adjudications performed at INS service centers, *see* 6 U.S.C. § 271(b).  The HSA also created the Bureau of Border Security, *see* HSA § 442; 6 U.S.C. § 252, and gave it authority over several programs, including the Border Patrol, detention and removal, intelligence, investigations, and inspections, *see* HSA § 441; 6 U.S.C. §§ 251, 252(a)(3)(A)(i).  In addition, the HSA transferred to DHS the nonrevenue functions of the United States Customs Service. *See* HSA §§ 403(1) and 412; 6 U.S.C. §§ 203(1) and 212.  Section 1502 of the HSA, 6 U.S.C. § 254, authorized further reorganization.  Under the reorganization the Bureau of Customs and Border Protection was created and the Bureau of Border Security was renamed the Bureau of Immigration and Customs Enforcement.  Press Release, United States Department of Homeland Security, *Border Reorganization Fact Sheet*, (Jan. 30, 2003) *available at* http://www.dhs.gov/dhspublic/interapp/press_release_0073.xml.  It is now the responsibility of the Bureau of Customs and Border Protection "to secure the nation's borders"; the Bureau of Immigration and Customs Enforcement "to enforce immigration laws"; and the Bureau of Citizenship and Immigration Services "to facilitate lawful immigration."  Press Release, United States Department of Homeland Security, *Fact Sheet: Leadership and Management Strategies for Homeland Security Merger*, (Feb. 11, 2004) *available at* http://www.dhs.gov/dhspublic/display?content=3155.

Bureau of Citizenship and Immigration Services (BCIS), because in April 2002 a Colorado state-court jury had found him guilty on two counts of distribution of a controlled substance. *See People v. Abiodun*, 111 P.3d 462 (Colo. 2005).

In the meantime, on July 8, 2002, the INS had commenced removal proceedings against him; it issued a notice to appear and a warrant for his arrest, and filed a detainer with Colorado authorities. On April 15, 2004, while Mr. Abiodun was still in Colorado prison, he participated by video conference in his initial removal hearing before the IJ. The hearing was continued to October 7, 2004, for reasons that are not apparent from the record. That hearing was further continued when a question arose about whether Mr. Abiodun's conviction was still on appeal. On December 30, 2004, Mr. Abiodun was released from Colorado prison on parole. The INS warrant for his arrest was executed that day and he was taken into custody by the Bureau of Immigration and Customs Enforcement.

After a brief hearing on January 18, 2005, the merits hearing on removal was conducted on February 1, 2005. The following colloquy occurred between Mr. Abiodun and the IJ:

> Q. If you deny any of these statements, the Government attorney will have to prove them in order to prove that you are deportable. Now the first one is, are you a citizen or a national of the United States?
>
> A. I'm not a citizen or national of the United States.
>
> Q. You are not?

A. Yes, Your Honor.

. . .

Q. All right. That's fine. Number 2, are you a native and citizen of Nigeria?

A. Yes, Your Honor.

Q. All right. Number 3, did you enter the United States at Denver, Colorado on October 9th, 1996?

A. Yes, Your Honor.

Q. Number 4, were you admitted to this country then as a permanent resident. In other words, a legal immigrant?

A. Yes, Your Honor.

Q. All right. Now, number 5 says and, of course, this is the reason for the removal hearing. It says that you were convicted in Jefferson County, Colorado for distribution of cocaine on May 28th, 2002. It says the crime was committed on June 21st, '01. And it says you received a [sentence] of 4 years at the Department of Corrections. Is this statement true or false?

A. That statement is true, Your Honor.

R. at 227-28. At the hearing Mr. Abiodun complained that the BCIS had rejected his application for naturalization after taking longer than permitted by law to make a determination. The IJ responded, "Well, sir, they denied your application for naturalization and I don't have any jurisdiction to review that. And if you were to apply today you would not be eligible for naturalization because of your conviction record." *Id*. at 233. The IJ adjourned the case to give Mr. Abiodun time to complete an application for asylum. But at a hearing on March 14, 2005,

Mr. Abiodun said he would not sign his application, and the IJ considered it withdrawn.

Also at the March 14 hearing, the IJ considered Mr. Abiodun's motion to terminate the removal proceedings on the ground that his state conviction was not final for immigration purposes because it was still on direct appeal. The motion cited *Matter of Thomas*, 21 I. & N. Dec. 20 (BIA 1995), which stated that "[i]t is well settled that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived. Consequently, a non-final conviction cannot support a charge of deportability . . . ." *Id*. n.1. After that decision, however, the Illegal Immigration Reform and Immigrant Act (IIRIRA) of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, adopted the following definition of *conviction*:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). At least two circuits have held that this definition eliminated any reference to appellate finality. *See Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004) ("IIRIRA eliminated the finality requirement for

a conviction."); *Moosa v. INS*, 171 F.3d 994, 1009 (5th Cir. 1999) ("There is no indication that the finality requirement . . . survives the new definition of 'conviction' found in IIRIRA."). In any event, in an order dated March 22, 2005, the IJ reported that Mr. Abiodun's direct appeal had been decided, and only the government's petition for certiorari to the Colorado Supreme Court (which related to other charges against him) had been granted. He therefore denied the motion.

On May 4, 2005, the IJ issued an oral decision ordering that Mr. Abiodun be removed to Nigeria. After noting that Mr. Abiodun "had stated that he wish[ed] to be considered for naturalization and have this hearing held in abeyance," the IJ responded that "a person who is convicted of an aggravated felony cannot show good moral character for the purposes of naturalization and is permanently ineligible." R. at 208. On September 21, 2005, the BIA dismissed Mr. Abiodun's appeal of the IJ's decision. The BIA stated:

> The [IJ]'s decision finding [Mr. Abiodun] removable as charged and denying his motion to hold his case in abeyance while he seeks naturalization is amply supported by the record. In particular, the record establishes the finality of the respondent's May 28, 2002, conviction for distribution of a controlled substance. Further, as noted by the [IJ], the respondent, whose naturalization application has already been denied by the Department of Homeland Security (DHS), is ineligible for naturalization due to his drug conviction which occurred during the 5 years in which he must show good moral character.

*Id*. at 2 (internal citation omitted). Mr. Abiodun filed a timely petition with this court for review of the BIA order.

On October 21, 2005, Mr. Abiodun filed with the BIA a motion to reconsider, challenging the denial of his application for naturalization. He asserted that he had "met all his statutory eligibility requirement[s] for naturalization preceding January 17, 2002, the date his Application for Naturalization was filed," R. Supp. at 32, and that the "decision to deny naturalization based on the appealed jury conviction of May 28, 2002, was a procedural error by the agency which violated the respondent's constitutional and statutory rights for naturalization and would warrant a reconsideration." *Id*. at 33. On November 14, 2005, he filed with the BIA an Emergency Motion for a Stay, requesting that his removal from the country be stayed until his motion to reconsider was resolved. The government opposed the motion, and Mr. Abiodun responded that he had "requested for a de novo judicial review of his petition for naturalization, pursuant to 8 U.S.C. 1421(c)." *Id*. at 15. That request is not in the record before this court. On November 16, 2005, Mr. Abiodun filed with the BIA a motion to supplement his motion to reconsider. This motion contended that the BCIS failed to act on his application for naturalization in a timely manner, which "renders its decision to deny naturalization void and transfers jurisdiction to United States district court, Colorado District." *Id*. at 10. The motion also stated that as part of the naturalization application process he took an oath of allegiance before an INS examiner, rendering him stateless if he were not naturalized. The BIA denied the motion to reconsider on December 8, 2005. Mr. Abiodun timely

petitioned for review of that decision as well. On December 23, 2005, this court

consolidated the two petitions for review, and in this opinion we address together

the various issues raised in the two petitions.

## II. DISCUSSION

The government contends that we lack jurisdiction to consider this appeal

because Mr. Abiodun is removable as the result of his commission of an

aggravated felony. It relies on 8 U.S.C. § 1252(a)(2)(C), which states, in relevant

part:

> Notwithstanding any other provision of law (statutory or
> nonstatutory) . . . , and except as provided in subparagraph (D), no
> court shall have jurisdiction to review any final order of removal
> against an alien who is removable by reason of having committed a
> criminal offense covered in section 1182(a)(2) or *1227(a)(2)(A)(iii)*,
> (B), (C), or (D) of this title, or any offense covered by section
> 1227(a)(2)(A)(ii) of this title for which both predicate offenses are,
> without regard to their date of commission, otherwise covered by
> section 1227(a)(2)(A)(i) of this title.

(emphasis added). Section 1227(a)(2)(A)(iii) states that an alien who commits an

aggravated felony is deportable. There is no question that Mr. Abiodun's drug-

trafficking convictions were aggravated felonies, *see id.* § 1101(a)(43)(B); but the

jurisdiction-strippping mandate of § 1252(a)(2)(C) has been limited by the

immediately succeeding subparagraph, *id.* § 1252(a)(2)(D), which was added as

part of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231.

Subparagraph (D) states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

In the discussion that follows, we will address our jurisdiction with respect to each claim.

Mr. Abiodun's first claim is that he is a national of the United States because, as part of the application process for naturalization, he swore an oath of allegiance to the United States. Ordinarily, courts of appeals reviewing removal orders have jurisdiction to consider such claims under 8 U.S.C. § 1252(b)(5)(A), which states: "If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim." *See Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 966 (9th Cir. 2003) (noting jurisdiction over an identical claim under § 1252(b)(5)). The typical case under this section is one in which a person undergoing removal proceedings contends that he or she "automatically" became a citizen. *See, e.g.*, 8 U.S.C. § 1431 ("A child born outside the United States automatically becomes a citizen of the United States when . . . ."); *Joseph v. Att'y Gen. of the U. S.*, 421 F.3d 224 (3d Cir. 2005) (reviewing claim that petitioner became a citizen through the naturalization of alleged mother). If there is a disputed issue of material fact over the nationality claim, under Subparagraph (B)

-10-

"the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim." 8 U.S.C. § 1252(b)(5)(B). Subparagraph (C) adds: "The petitioner may have such nationality claim decided only as provided in this paragraph." Section 1252(b)(5), however, is not excepted from the jurisdiction-stripping mandate of § 1252(a)(2)(C). Therefore, because Mr. Abiodun is being removed for commission of an aggravated felony, we can review his claim under § 1252(b)(5) only with respect to constitutional claims or questions of law.

The contention raised by Mr. Abiodun is a pure question of law. There is no genuine issue of material fact with respect to Mr. Abiodun's claim of nationality. The government concedes that Mr. Abiodun "signed an oath of allegiance during his naturalization interview." But the government contends that such signing "is insufficient to make him a citizen of the United States because an oath must occur during a public ceremony and Abiodun's did not." Resp't Br. at 20-21. We agree. Signing an oath during the application process does not satisfy the "public ceremony" requirement of 8 U.S.C. § 1448 ("A person who has applied for naturalization shall, in order to be and before being admitted to citizenship, take in a public ceremony before the Attorney General or a court with jurisdiction under section 1421(b) of this title an oath . . . ."). *See Tovar-Alvarez v. U. S. Att'y Gen.*, 427 F.3d 1350, 1353 (11th Cir. 2005) (rejecting an identical claim because petitioner "failed to show that he has taken the oath of allegiance

-11-

during a public ceremony"); *Perdomo-Padilla*, 333 F.3d at 972 (filing an application for naturalization in which an oath of allegiance is signed does not make the applicant a United States national).

Mr. Abiodun next claims that the District Director's denial of his application for naturalization deprived him of his right to procedural due process and certain statutory rights. If we otherwise had jurisdiction to hear this claim, perhaps § 1252(a)(2)(D) would preserve our jurisdiction despite Mr. Abiodun's conviction for an aggravated felony and the mandate of §1252(a)(2)(C). But regardless of this conviction, we cannot review such a challenge to naturalization proceedings when we are conducting a review of a removal order. What § 1252(b)(5) permits to be considered on review of removal orders is only a claim that the petitioner is a national of the United States, not a claim that the petitioner's application for naturalization was wrongly denied. Claims of unlawful denial must be brought before the United States district court for the district in which the petitioner resides. *See* 8 U.S.C. § 1421(c). Some discussion of the process of applying for naturalization will be helpful in explaining why this is the case.

Under 8 U.S.C. § 1421(a), "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." An application for naturalization is therefore filed with the Attorney General. *Id*. § 1445(a) ("An applicant for naturalization shall make and file with the Attorney

-12-

General a sworn application . . . ."). In turn, the Attorney General designates employees "to conduct examinations upon applications for naturalization," *Id.* § 1446(b). The employee "shall make a determination as to whether the application should be granted or denied." *Id.* § 1446(d). If the employee fails to make a determination within 120 days after the examination, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [BCIS] to determine the matter." *Id.* § 1447(b). If the examiner denies the application, "the applicant may request a hearing before an immigration officer." *Id.* § 1447(a). And if the application is denied after this hearing, review is again in the district court. *See id.* § 1421(c). This is a de novo review in which the district court makes its own findings of fact and conclusions of law, and conducts a hearing upon the applicant's request. *See id.*

These provisions make it clear that the United States district courts have sole jurisdiction over the denial of applications for naturalization. Thus, when Mr. Abiodun contended during his removal proceedings that his application for naturalization was not timely considered, the IJ correctly responded, "I don't have any jurisdiction to review that." R. at 233. If the District Director erred in denying Mr. Abiodun's application for naturalization, or if, as Mr. Abiodun contends, the application was not acted on quickly enough after the examination,

-13-

his remedy was in district court. *See Nagahi v. United States*, 219 F.3d 1166, 1168-69 (10th Cir. 2000) ("As part of the Immigration and Naturalization Act (INA), Congress specifically granted jurisdictional authority to the federal district courts to review the denial of an application for naturalization."). In sum, review of a decision denying naturalization is outside the scope of removal proceedings, and in this case we cannot consider Mr. Abiodun's challenges to the rejection of his naturalization application. *See Tsegay v. Ashcroft*, 386 F.3d 1347, 1353 (10th Cir. 2004) ("As a court of limited subject matter jurisdiction, we review administrative agency decisions only as provided by acts of Congress.").

Mr. Abiodun also raises two claims relating to his state conviction. First, he asserts that his conviction records have "been falsified," Pet'r Br. at 16, and that the IJ's reliance on these falsified records violates his due-process rights. But there is no factual support in the record for this assertion. Second, he asserts that his conviction "was secured by evidence that did not support the verdict." Pet'r Br. at 12. But "a petitioner cannot collaterally attack the legitimacy of his state criminal convictions in the deportation proceedings." *Trench v. INS*, 783 F.2d 181, 183 (10th Cir. 1986); *see also Olivera-Garcia v. INS*, 328 F.3d 1083, 1086 (9th Cir. 2003) (criminal conviction cannot be reviewed in immigration proceeding).

Mr. Abiodun next contends that his due-process rights were violated by the issuance of a detainer soon after his state-court conviction, and by his arrest and

-14-

detention during the removal proceedings, because (1) his application for naturalization was still pending and (2) he had not exhausted his right to appeal his sentence. Perhaps his claims that he was subjected to an unlawful detainer and unlawful detention would be "constitutional claims or questions of law" reviewable under 8 U.S.C. § 1252(a)(2)(D), but he fails to explain how any such illegality affected his removal proceedings. For example, he does not claim that his detention prevented him from obtaining favorable evidence for the proceedings. As a result, a determination by this court that he was unlawfully detained or subjected to an unlawful arrest or detainer would not avail him in this case.[2] *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984) ("the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding" (internal quotation marks and brackets omitted)); *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 ("No remedy for the alleged constitutional violations [including a claimed illegal arrest] would affect the BIA's final order of removal."). We therefore need not review these claims. *See Smith v. Plati*, 258 F.3d 1167, 1179 (10th Cir. 2001) (issue is moot when no relief can be granted).

---

[2]This is not to say that he could not seek relief if he were detained unlawfully. In fact, according to Mr. Abiodun, on February 25, 2005, he filed in the United States District Court for the District of Colorado an application for habeas relief under 28 U.S.C. § 2241, seeking release from federal custody. That application is not part of the record, though the record does contain an order to show cause dated March 30, 2005, requiring the INS to respond to the application by April 29. The record does not reflect the disposition of the § 2241 application.

-15-

Finally, Mr. Abiodun contests the IJ's conclusion that he had abandoned his asylum application. The asylum-application form was given to Mr. Abiodun at the removal hearing on February 1, 2005. He was instructed to fill out the form and return it. At a hearing on February 15, 2005, he stated that he had filled out the form. But at the next hearing, the purpose of which was to rule on his motion to terminate the proceedings because his state conviction was not final, he informed the IJ that he had refused to sign the form because, he contended, he was not removable. The IJ asked Mr. Abiodun whether he wished to pursue asylum if the motion to terminate the removal proceedings was denied. When Mr. Abiodun did not provide a responsive answer, the IJ said that he would "consider that you've withdrawn your asylum application since you've refused to sign it. And if I rule against you on [the motion to terminate], then I'll issue an order [of] removal. If I rule in your favor, then I'll terminate your case." R. at 246. In an order dated March 22, 2005, the IJ denied the motion to terminate the removal proceedings, explaining that Mr. Abiodun's conviction was final because his direct appeal had been decided and the Colorado Supreme Court had denied his petition for a writ of certiorari. Rather than issuing an order of removal, however, the IJ gave Mr. Abiodun another chance "to present his asylum case." *Id*. at 345. At a hearing on May 4, 2005, Mr. Abiodun again refused to sign his asylum-application form or testify regarding it. The IJ then ordered Mr. Abiodun removed from the country, deeming his asylum application to have been

abandoned.  In his appeal to the BIA, Mr. Abiodun again asserted that the asylum hearing was premature, because his conviction was not final.  Although the BIA did not specifically address this asylum issue, it did conclude that Mr. Abiodun's conviction was final.

Mr. Abiodun's challenge to the ruling that he abandoned his asylum application raises no "constitutional claim[] or question[] of law." § 1252(a)(2)(D).  Therefore § 1252(a)(2)(C) deprives us of jurisdiction to review this claim.

## III.  CONCLUSION

We AFFIRM the BIA's dismissal of Mr. Abiodun's appeal from the IJ's order of removal and its denial of his motion to reopen.  We DENY the government's motion to strike.