# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GHENA NEGASH IASU,
　　　　　*Petitioner-Appellant,*

v.

RON SMITH, Director of San Diego
Field Office, U.S. Immigration and
Customs Enforcement; MICHAEL B.
MUKASEY,* Attorney General;
MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security; ANTHONY CERONE, Acting
Officer-In-Charge, San Diego
Detention Center,
　　　　　*Respondents-Appellees.*

No. 06-55681

D.C. No.
CV-05-00088-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
June 6, 2007—Pasadena, California

Filed December 18, 2007

Before: Stephen S. Trott and Johnnie B. Rawlinson,
Circuit Judges, and Samuel P. King,** District Judge.

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Opinion by Judge King

## COUNSEL

Lori B. Schoenberg, Reeves & Associates, Pasadena, California, for the petitioner-appellant.

Jennifer Paisner, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondents-appellees.

---

**OPINION**

KING, District Judge:

Ghena Negash Iasu appeals the district court's order (1) dismissing for lack of subject matter jurisdiction his amended 28 U.S.C. § 2241 petition challenging his removability, and (2) declining to transfer the petition to the Ninth Circuit under section 106(c) of the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005). We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Iasu faces removal to Eritrea. But he contends he is a naturalized American citizen, and thus he challenges the government's power to remove him. *See, e.g.*, *Rivera v. Ashcroft*, 394 F.3d 1129, 1136 (9th Cir. 2005) ("The executive may deport certain aliens but has no authority to deport citizens."). Iasu, however, did not raise this contention during removal proceedings and did not appeal the immigration judge's (IJ's) final order of removal. Rather, he challenged his removal later by filing a § 2241 habeas petition in district court — a procedure that the REAL ID Act eliminated in lieu of a new provision, codified at 8 U.S.C. § 1252(a)(2)(D), allowing direct review of "constitutional claims or questions of law." The district court dismissed the petition for lack of jurisdiction under the REAL ID Act's jurisdiction-stripping provision set forth in 8 U.S.C. § 1252(b)(9),[1] and declined to transfer the matter

---

[1]The REAL ID Act added the following language to section 1252(b)(9):

Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or

to the Ninth Circuit because the amended petition was filed after the REAL ID Act's effective date of May 11, 2005. *See Iasu v. Chertoff*, 426 F. Supp. 2d 1124 (S.D. Cal. 2006).

On appeal, Iasu contends the REAL ID Act is an unconstitutional suspension of the writ of habeas corpus as applied to his claim to citizenship because (1) there is always jurisdiction to determine jurisdiction, and (2) American citizenship must be intentionally relinquished and cannot be established by waiver. *See, e.g.*, *Theagene v. Gonzales*, 411 F.3d 1107, 1110 (9th Cir. 2005). He claims he no longer has an opportunity to raise his non-frivolous claim of citizenship. Alternatively, he seeks to have the Ninth Circuit adjudicate his citizenship by construing his appeal as a petition directly reviewing a final order of removal.

A district court's decision to dismiss a habeas corpus petition for lack of subject matter jurisdiction is reviewed de novo. *Puri v. Gonzales*, 464 F.3d 1038, 1040 (9th Cir. 2006).

## II.

Iasu left Ethiopia in 1978 for Sudan. He was born in Eritrea, which was part of Ethiopia before Eritrea became a country in 1993. He left Sudan in 1985 for the United States. He became a lawful permanent resident of the United States in 1986. After two attempts at naturalization in the early-1990's, Iasu's naturalization application was approved on April 24, 2002. He had passed a citizenship test, and satisfied several other conditions of citizenship. He also filed a petition for a name change in conjunction with the naturalization process.[2] A "Form N-XXX" dated April 23, 2002, indicated that

---

any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*See Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).

[2]Title 8 U.S.C. § 1447(e) provides:

It shall be lawful at the time and as a part of the administration

Iasu petitioned to have his named changed to "Amare Gabreg-zeabher Nugsa." That form also has a line reading "the above petition was granted by the court on _____" with "July 04, 2002" typed into the space. It was signed by a deputy clerk. (The "July 4, 2002" was apparently pre-dated.) The naturalization application has an oath of allegiance signed by "Amare Gabreegzeabher [sic] Nugsa" and dated April 23, 2002.[3] Iasu's declaration states that an immigration service officer asked him to raise his hand, read the oath, and told him to sign his name. Iasu states that, after he signed his name, the officer said "congratulations, you're done." The officer told him that he would get a citizenship certificate on July 4, 2002 (and presumably participate in a "public ceremony" as required under 8 U.S.C. § 1448(a)).

Iasu, however, failed to appear at the Fourth of July citizenship ceremony. He couldn't appear because he had been arrested for armed assault in the meantime on May 30, 2002. On July 19, 2002, he was convicted in state court of assault with a deadly weapon and was sentenced to three years in state prison.

After Iasu's release from prison, the government initiated removal proceedings against him on January 30, 2004, under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. During different hearings before different IJs (proceeding pro se, with continuances to allow him

---

by a court of the oath of allegiance under section 1448(a) of this title for the court, in its discretion, upon the bona fide prayer of the applicant included in an appropriate petition to the court, to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.

[3] 8 C.F.R. § 337.4 provides:

When the court has granted the petitioner's change of name request, the petitioner shall subscribe his or her new name to the written oath of allegiance.

to seek counsel), he made some references to his citizenship status. Both Iasu and the IJs seemed uncertain as to whether Iasu was a citizen of Eritrea or, rather, Ethiopia. Iasu also mentioned his 2002 naturalization proceedings, and that he was an American citizen, but he did not base his challenge to removal on his purported American citizenship status. He eventually waived his right to seek deferral of removal and waived his right to appeal to the Board of Immigration Appeals (BIA). An IJ issued a final order of removal to Eritrea.

After being remanded into federal custody, Iasu filed a § 2241 habeas petition in district court (through counsel) on January 18, 2005, challenging his indefinite detention under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (limiting an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States). The habeas petition was then amended on July 22, 2005 (*after* the REAL ID Act took effect on May 11, 2005) to challenge his removal, asserting for the first time that he was a naturalized American citizen. After the district court dismissed the amended habeas petition and declined to transfer the matter to the Ninth Circuit, Iasu filed a timely appeal.

### III.

In *Rivera*, the Ninth Circuit held that — because of the jurisdictional nature of a non-frivolous claim to American citizenship in a removal proceeding — habeas jurisdiction existed in a district court under § 2241 to address such a claim. 394 F.3d at 1138 ("The only result consistent with the Fifth and Fourteenth Amendments is that habeas relief be available to hear Rivera's citizenship claim."). It found "extreme circumstances," *id.* at 1139, because "[a]n assertion of U.S. 'citizenship is . . . a denial of an essential jurisdictional fact' in a deportation proceeding." *Id.* at 1136 (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922)). It also relied on the principle that American citizenship must be intention-

ally relinquished. *Id.* at 1137 (citing *Vance v. Terrazas*, 444 U.S. 252, 260-61 (1980)). "Because he has a colorable citizenship claim, Rivera has a constitutional right to judicial review, and may obtain such review via habeas corpus even after accepting deportation and waiving his right to appeal the IJ's decision." *Id.*; *see also Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005) (holding on direct review from the BIA that "[b]ecause Minasyan's claim to citizenship is not patently frivolous, we have jurisdiction to review it, irrespective of whether he has exhausted his claim before the agency."). Under *Rivera*, "the Constitution is violated when a person with a non-frivolous claim to U.S. citizenship is deported without receiving a judicial determination of that claim." 394 F.3d at 1140.

*Rivera* was grounded in part in *INS v. St. Cyr*, 533 U.S. 289, 305 (2001), wherein the Supreme Court held that a writ of habeas corpus under § 2241 was necessary to avoid implicating the Suspension Clause.[4] *See Rivera*, 394 F.3d at 1137. After passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, courts lacked jurisdiction to review final orders of removal for aggravated felons. *St. Cyr*, 533 U.S. at 297. In allowing a § 2241 remedy, *St. Cyr* reasoned that a regime precluding any judicial review of "pure questions of law" would be constitutionally suspect under the Suspension Clause. *Id.* at 305. *St. Cyr* also indicated that habeas relief might not be required if Congress provided "an adequate substitute through the courts of appeals." *Id.* at 314 n.38.

---

[4]The Constitution's Suspension Clause reads:

> The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

U.S. Const, art. I, § 9.

**[1]** The REAL ID Act changed the statutory regime. Effective May 11, 2005, the REAL ID Act responded to *St. Cyr* by eliminating all district court habeas jurisdiction over orders of removal. Title 8 U.S.C. § 1252(a)(5), as amended by § 106(a) of the REAL ID Act, provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). Congress addressed Suspension Clause concerns raised in *St. Cyr* by allowing (i.e., reinstating) review in courts of appeals of final removal orders of aggravated felons for "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in . . . any . . . provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

**[2]** Given a retroactive application of the REAL ID Act's elimination of habeas jurisdiction, § 106(c) of the REAL ID Act also required (1) district courts to transfer to courts of

appeals any habeas petitions challenging final orders of removal that were pending on its effective date of May 11, 2005, and (2) courts of appeals to treat such habeas cases as if they were timely petitions for review of such final orders.[5] *See Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929 (9th Cir. 2005). Any such habeas petitions pending on appeal on May 11, 2005, are similarly treated as timely petitions for review. *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005). "Section 106(c) is a transition rule[.]" *Chen v. Gonzales*, 435 F.3d 788, 789 (7th Cir. 2006).

"Congress' clear intent [was] to have all challenges to removal orders heard in a single forum (the courts of appeals)[.]" *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (citing H.R. Conf. Rep. No. 109-72, at 174 (2005)). "Congress assumed this task [of complying with the Suspension Clause] in enacting the Real ID Act, with the explicit intent to give 'every alien one day in the court of appeals, satisfying constitutional concerns.' " *Ramadan v. Gonzales*, 479 F.3d 646, 653 (9th Cir. 2007) (quoting H.R. Rep. No. 109-72, at 175). "These modifications effectively limit all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Bonhometre*, 414 F.3d at 446.

---

[5]Section 106(c) of the REAL ID Act provides:

  If an alien's case, brought under [28 U.S.C. § 2241], and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment [of this Act], then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed under [INA § 242(b)(2), 8 U.S.C. § 1252], as amended by this section, . . . . The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that [the 30-day filing deadline] shall not apply.

*See generally Singh*, 499 F.3d at 975-76 (setting forth statutory background of the REAL ID Act).

**[3]** But for the REAL ID Act, Iasu could have filed a habeas petition in district court even if he had not appealed the removal order directly. *Rivera*, 394 F.3d at 1137. He could have done so for jurisdictional reasons if he had a "non-frivolous" claim to citizenship, given the reasoning in *St. Cyr* that "wholesale repeal of habeas jurisdiction over pure questions of law would be constitutionally suspect" without some type of judicial review. *Ramadan*, 479 F.3d at 652 (citing *St. Cyr*, 533 U.S. at 301-05). After the REAL ID Act, however, the district court plainly lacked habeas jurisdiction.

## IV.

**[4]** Iasu therefore challenges the new statutory regime on Suspension Clause grounds. However, the Ninth Circuit has held that, facially, the REAL ID Act is not an unconstitutional suspension of the writ because the new statutory scheme provides an "adequate substitute" by allowing judicial review of the final order of removal through the courts of appeals. *See Puri*, 464 F.3d at 1042 ("[T]his court's review of the administrative proceeding is an adequate substitute for district court habeas corpus jurisdiction.") (citing *St. Cyr*, 533 U.S. at 314 n.38); *cf. Ramadan*, 479 F.3d at 653 ("Congress assumed this task [of providing adequate and effective review for all aliens subject to removal] in enacting the Real ID Act, with the explicit intent to give 'every alien one day in the court of appeals, satisfying constitutional concerns,' and we are compelled to interpret that Act accordingly.") (citations omitted).

**[5]** The petitioner in *Puri*, like Iasu here, had filed his district court § 2241 habeas petition almost three months after the REAL ID Act's effective date. 464 F.3d at 1041. *Puri* also indicated that a petition for direct review had been dismissed. *Id.* at 1043. Thus, similar to *Puri*, Iasu had a means for seeking relief (direct review). Iasu had simply failed to pursue the

relief that the statutory scheme allows. *See* 8 U.S.C. § 1252(a)(2)(D) (specifically allowing judicial review of "constitutional claims or questions of law raised upon a petition for review").

*Puri* followed the First Circuit's reasoning that review by a court of appeals of "pure questions of law . . . provides . . . the same review and the same relief . . . as were available under prior habeas law." *Id.* at 1042 (quoting *Enwonwu v. Gonzales*, 438 F.3d 22, 33 (1st Cir. 2006). Other circuits have similarly upheld the REAL ID Act against Suspension Clause challenges. *See Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) ("Section 106 of the Real ID Act does not violate the Suspension Clause of the Constitution because it provides, through review by a federal court of appeals, an adequate and effective remedy to test the legality of an alien's detention."); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (same).

**[6]** Moreover, because Iasu had no habeas petition challenging his removal pending on or before the REAL ID Act's effective date, he could not use the statutory replacement — direct review on a *transferred* petition — that the REAL ID Act's transitional rules in § 106(c) gave in lieu of district court habeas review. That is, there was no existing habeas proceeding that a court could properly treat as a timely petition for review under § 106(c). *See, e.g.*, *Alvarez-Barajas*, 418 F.3d at 1053 (discussing § 106(c), which requires conversion of *pending* habeas petitions into timely filed petitions for review). Recent case law from other circuits confirms that it is improper to allow a habeas petition that was not pending on or before May 11, 2005, to be treated as a petition for review. *See Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617 (2d Cir. 2007) (disallowing transfer of habeas petition filed after passage of the REAL ID Act); *Chen*, 435 F.3d at 790 ("A petition under § 2241 filed in a district court after [May 11, 2005] . . . must be dismissed; it can be neither entertained nor transferred."). Construing Iasu's post-May 11, 2005, amended

petition as one seeking direct review of a final order of removal would violate clear Congressional intent.[6]

## V.

As Iasu points out, even after the REAL ID Act, Congress left intact 8 U.S.C.§ 1252(b)(5) regarding nationality claims. If habeas relief is no longer available, he appears to suggest using § 1252(b)(5) as authority for us to review his nationality claim on the merits. Section 1252(b)(5) provides:

> Treatment of nationality claims
>
> (A) Court determination if no issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>
> (B) Transfer if issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's national-

---

[6]Iasu does not contend that his petition's original filing date of January 18, 2005, applies so as to render the petition "pending" for purposes of section 106(c) of the REAL ID Act. He recognizes that the amendment filed on July 2, 2005, changed the relief sought and thus cannot "relate back" to the original filing date. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) (concluding that an amended habeas petition does not "relate back" if "it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."). Rather, for a petition to be "pending" for purposes of section 106(c) of the REAL ID Act, it must be a petition "challenging a final administrative order of removal, deportation, or exclusion." The original petition did not make such a challenge; only the amended petition did so.

ity is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination

The petitioner may have such nationality claim decided only as provided in this paragraph.

**[7]** Section 1252(b)(5) "requires the court of appeals to decide the [nationality] issue 'if the petitioner claims to be a national of the United States' and the facts . . . are not in dispute." *Hughes v. Ashcroft*, 255 F.3d 752, 755 (9th Cir. 2001). Indeed, in *Theagene* the Ninth Circuit noted that § 1252(b)(5) appears "to provide a fail safe against inadvertent or uninformed execution of a final order of removal against a person with a claim to United States nationality." 411 F.3d at 1110 n.4.

**[8]** Section 1252(b)(5), however, applies to nationality claims made on direct review of a final order of deportation. *See id.* at 1110 ("[T]he plain language of § 1252(b)(5) requires that *upon a petition for review of the BIA's final order of removal*, we must evaluate a petitioner's claim to United States nationality regardless of whether the claim was raised below.") (emphasis added). It does not override other provisions limiting petitions for habeas relief under § 2241. *See* 8 U.S.C. § 1252(a)(5) (". . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal[.]").

If Iasu had petitioned for review on any basis, then we would have had jurisdiction to review his present nationality claim under § 1252(b)(5), notwithstanding his status as an

aggravated felon. *See Barthelemy v. Ashcroft*, 329 F.3d 1062, 1064 (9th Cir. 2003) ("We do not have jurisdiction to review a criminal alien's final order of removal. But where, as here, the petitioner claims he is a United States citizen not subject to removal, we have jurisdiction to determine whether the petitioner is an alien or a citizen.") (citations omitted). Furthermore, we would have had jurisdiction to review nationality even if he had not previously raised and exhausted such a claim. *See Theagene*, 411 F.3d at 1110 ("[W]e must evaluate a petitioner's claim to United States nationality regardless of whether the claim was raised below."); *see also Jordon v. Att'y Gen.*, 424 F.3d 320, 325 n.8 (3d Cir. 2005). Or we could have reviewed Iasu's claim to citizenship under the REAL ID Act's new judicial review provision. *See Brue v. Gonzales*, 464 F.3d 1227, 1231-32 (10th Cir. 2006) (concluding that courts of appeals have jurisdiction to review citizenship claim under the REAL ID Act's new power to review "constitutional claims or questions of law" in § 1252(a)(2)(D)).

But, again, this appeal is not here on direct review; Iasu failed to file a petition for review challenging his final order of deportation.

## VI.

The government cites several out-of-circuit cases indicating, on the merits, that Iasu's claim to citizenship would fail because he did not complete the naturalization process's "public ceremony" requirement set forth in 8 U.S.C. § 1448(a) (requiring participation in a "public ceremony" before "being admitted to citizenship") and in 8 C.F.R. §§ 337.1(a) and 337.2(a). *See Okafor v. Gonzales*, 456 F.3d 531, 534 (5th Cir. 2006) (rejecting argument that alien's oath signed during or immediately after his naturalization interview satisfied the "public oath" requirement in 8 U.S.C. § 1448(a)); *Abiodun v. Gonzales*, 461 F.3d 1210, 1215-16 (10th Cir. 2006) (same); *Tovar-Alvarez v. U.S. Att'y Gen.*, 427 F.3d 1350, 1353 (11th Cir. 2005) (same).

Iasu attempts to distinguish such cases by contending that he did take an appropriate oath before an immigration officer designated by the Attorney General. *See* 8 U.S.C. § 1448(a) (requiring "a public ceremony before the Attorney General *or* a court with jurisdiction under section 1421(b) of this title[.]") (emphasis added); 8 C.F.R. § 337.9(a) ("An applicant for naturalization shall be deemed a citizen of the United States as of the date on which the applicant takes the prescribed oath of allegiance, administered *either* by the Service or an Immigration Judge in an administrative ceremony or in a ceremony conducted by an appropriate court under § 337.8 of this chapter.") (emphasis added). In certain circumstances, the immigration statutes do appear to contemplate giving applicants a choice as to where and how the required oath of allegiance is administered. *See* 8 U.S.C. § 1421(b)(1)(A) ("Except as provided in subparagraph (B), each applicant for naturalization may choose to have the oath of allegiance . . . administered by the Attorney General or by an eligible court[.]"). It is unclear whether the applicable "eligible court" had invoked its "exclusive authority to administer the oath of allegiance" in Iasu's situation. *See* 8 U.S.C. § 1421(b)(1)(B) ("An eligible court . . . that wishes to have exclusive authority to administer the oath of allegiance . . . shall notify the Attorney General of such wish and . . . shall have such exclusive authority with respect to such persons during such period.").

**[9]** Ultimately, however, we lack jurisdiction in the current procedural posture to address the merits of Iasu's claim to citizenship. Sections 1252(a)(5) and 1252(a)(2)(D) are provisions for direct appeals, and — absent an as-applied violation of the Suspension Clause — the REAL ID Act has eliminated habeas corpus jurisdiction.

## VII.

**[10]** Nevertheless, a fundamental element — a claim to citizenship — is still at issue. *See Rivera*, 394 F.3d at 1136 ("An assertion of U.S. 'citizenship is thus a denial of an essential

jurisdictional fact' in a deportation proceeding.") (quoting *Ng Fung Ho*, 259 U.S. at 284); *Theagene*, 411 F.3d at 1110-11 (reviewing unexhausted nationality claim under 8 U.S.C. § 1252(b)(5) because courts necessarily have jurisdiction to determine jurisdiction). The principle that courts have jurisdiction to determine jurisdiction is well-settled in this context where alienage is questioned (at least in a petition for direct review). *See, e.g.*, *Hughes*, 255 F.3d at 755 (finding jurisdiction to review alienage under § 1252(b)(5)(A) because such a claim is a "jurisdictional fact"); *Omolo v. Gonzales*, 452 F.3d 404, 407 (5th Cir. 2006) ("Only an 'alien' may be required to exhaust his administrative remedies; accordingly, we must determine whether Omolo is an alien in order to determine whether § 1252(d)(1) bars our jurisdiction."); *Brue*, 464 F.3d at 1231-32; *see also Drakes v. Ashcroft*, 323 F.3d 189, 190 (2d Cir. 2003) (finding authority to determine jurisdiction where petitioner facing removal contended she had acquired derivative American citizenship, observing that such a "jurisdictional inquiry 'merges' with the merits of the case.").

**[11]** Consequently, the post-REAL ID Act statutory regime may have an impermissible retroactive effect as applied to Iasu's (perhaps unique) situation, unless he still has some opportunity for judicial review. We are still bound by the holding in *Rivera* that "a non-frivolous claim to U.S. citizenship" gives a person a constitutional right to judicial review that may be obtained "even after accepting deportation and waiving his right to appeal the IJ's decision[.]" 394 F.3d at 1137. As the Ninth Circuit recently observed sitting en banc:

> This limbo — in which the petitioner is subject to a void order of removal but has no judicial remedy — may raise serious constitutional concerns because the Suspension Clause 'unquestionably' requires 'some judicial intervention in deportation cases.'

*Lolong v. Gonzales*, 484 F.3d 1173, 1177 (9th Cir. 2007) (en banc) (quoting *St. Cyr*, 533 U.S. at 300).

*Rivera* distinguished *Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002) (finding no habeas relief available where the petitioner could have sought relief on direct review — but did not — regarding nationality under 8 U.S.C. § 1252(b)(5)) because Taniguchi's claim to American citizenship was patently frivolous. *Rivera*, 394 F.3d at 1138. That is, the Suspension Clause is not implicated and there is no need for potential habeas relief if a claim to citizenship that was abandoned on direct review is "patently frivolous."

**[12]** Iasu's claim, however, is not "patently frivolous." Although other circuits[7] have specifically rejected the argument that an alien's oath signed during or immediately after his naturalization interview satisfies the "public ceremony" requirement in 8 U.S.C. § 1448(a), the Ninth Circuit has not yet done so in a published opinion. This alone suggests Iasu's position is not without some arguable basis in law. *See Guti v. INS*, 908 F.2d 495, 496 (9th Cir. 1990) (reasoning that a "frivolous" claim in an immigration context must lack "any arguable basis in law or in fact" and that standard is not met when there is no controlling authority requiring a holding that the claim lacks even an arguable basis as a matter of law) (citations omitted); *cf. Lew Shee v. Nagle*, 7 F.2d 367, 368 (9th Cir. 1925) (allowing habeas jurisdiction, reasoning that claim to American citizenship is not frivolous if supported by competent evidence). Moreover, the statutory and regulatory regime does appear to allow (at least in some circumstances which may or may not apply here) the naturalization process to be completed by an oath before an official of the Bureau of Citizenship and Immigration Services. *See, e.g.*, 8 U.S.C. § 1421(b)(1)(A); 8 C.F.R. § 337.9(a).[8]

---

[7]*See Okafor*, 456 F.3d at 534; *Abiodun*, 461 F.3d at 1215-16, *Tovar-Alvarez*, 427 F.3d at 1353.

[8]Although we do not have jurisdiction in the present posture to decide the merits of Iasu's claim to citizenship one way or the other, we do have jurisdiction to determine whether his claim is patently frivolous as part of our jurisdiction to determine whether we have jurisdiction.

**[13]** Importantly, the government points out that Iasu still — even now — has at least the possibility of filing a motion to reopen with an IJ to attempt to assert his nationality claim.[9] *See* 8 C.F.R. § 1003.23(b). A potential motion to reopen can suffice to alleviate Suspension Clause concerns. In *Alexandre*, the Eleventh Circuit reasoned that a motion to reopen before the BIA, and the attendant possibility of a petition for review in a court of appeals thereafter, could satisfy constitutional concerns.

> Even though habeas corpus relief is precluded by the REAL ID Act, a deportable alien can still seek review of constitutional and legal claims by moving the BIA to reopen or reconsider its previous ruling, and if unsuccessful, by filing a petition for review in the court of appeals. *See* 8 C.F.R. § 1003.2(c); 8 U.S.C. § 1252(a)(5), (2)(D). This procedure offers the same review as that formerly afforded in habeas corpus which provided legal, but not factual or discretionary, determinations.

*Alexandre*, 452 F.3d at 1206 (citations omitted). Likewise, the Eighth Circuit adopted the Eleventh Circuit's reasoning in rejecting a similar as-applied Suspension Clause challenge to the REAL ID Act. *See Mohamed*, 477 F.3d at 526 ("This court is persuaded by *Alexandre* . . . . The petitioner there had the opportunity to add new evidence to the record by a motion to reopen with the Board, and the Eleventh Circuit found the REAL ID Act to be an adequate and effective substitute for habeas review.") (citations omitted).

---

[9]The government also proffers 8 U.S.C. § 1503(a) as another possible remedy. Section 1503(a) allows an action seeking a judgment declaring a petitioner to be a United States national. However, it specifically disallows an action if the nationality issue "arose by reason of, or in connection with any removal proceeding[.]" Rather, § 1252(b)(5) is the exclusive means of obtaining a declaration of nationality for a person in removal proceedings (and it must be sought in a petition for review of the final order of removal). *See* 8 U.S.C. § 1252(b)(5)(C).

Iasu recognizes that a motion to reopen would appear to be untimely and could be construed as not asserting any new facts not previously available. *See Iturribarria v. INS*, 321 F.3d 889, 896 (9th Cir. 2003) (stating that the "purpose of a motion to reopen is to present new facts or evidence that would entitle the alien to relief from deportation."). Iasu contends that such a motion to reopen would thus be completely discretionary with an IJ under the IJ's sua sponte powers. *See* 8 C.F.R. § 1003.23(b)(1).

**[14]** We cannot predict what an IJ or the BIA might do if a motion to reopen is filed. Presumably, alienage is also a jurisdictional prerequisite at the administrative level. *See Theagene*, 411 F.3d at 1110 n.4 ("We do not mean to imply that the question of nationality may not be addressed at the administrative level. Inasmuch as the immigration judge and the Board have no subject matter jurisdiction over United States nationals, those officials will have to investigate the issue if it is raised."). However, even if an IJ denies such a motion to reopen as procedurally improper, and even if the BIA upholds the denial, a court of appeals could still review the jurisdictional issue on direct appeal from that denial. *See, e.g.*, *Theagene*, 411 F.3d at 1110; *Minasyan*, 401 F.3d at 1074-75; *Hughes*, 255 F.3d at 755. At that point, the case would be in a procedural posture so that 8 U.S.C. § 1252(b)(5) and § 1252(a)(2)(D) could be invoked, or opinions such as *Okafor*, 456 F.3d at 534; *Abiodun*, 461 F.3d at 1215-16, and *Tovar-Alvarez*, 427 F.3d at 1353, could be adopted in this Circuit.

**[15]** We thus agree with the Eleventh Circuit in *Alexandre* that a potential motion to reopen at the administrative level and the possibility of judicial review thereafter provides the necessary process to alleviate Suspension Clause concerns. *See Alexandre*, 452 F.3d at 1206.

## CONCLUSION

This case further demonstrates that "[t]he maze of immigration statutes and amendments is notoriously complicated and

. . . . [t]he recent amendments under the REAL ID Act do not make our task any easier." *Singh*, 499 F.3d at 980. The district court properly held that the REAL ID Act deprives courts of subject-matter jurisdiction over Iasu's petition under 28 U.S.C. § 2241 challenging his final order of removal. Because the case was filed after the REAL ID Act's effective date, the district court correctly declined to transfer the case to the Ninth Circuit. The REAL ID Act does not violate the Suspension Clause because Iasu had, and still has, at least some opportunity for judicial review of his claim to citizenship.

**AFFIRMED.**